## Union Central Life Insurance Company v. Rose B. Burnett.

### Gen. No. 13,291.

1. INSURANCE—*when estoppel to insist upon forfeiture of, exists.* Estoppel to insist after the assured's death upon a forfeiture arises where knowledge is brought to the insurer by reason of notice to its agent that the assured is relying upon the continued existence of the insurance.

2. INSURANCE—*what competent to show waiver of forfeiture of.* Letters of the agent of the insurer apparently treating a policy as in force are competent upon the question of whether the insurer has waived a cause of forfeiture.

3. EVIDENCE—*when that of deceased witness properly admitted.* The evidence of a witness given at one trial of a cause may be introduced after the death of such witness at a second trial of the same cause notwithstanding there was no cross-examination of such witness by reason of the fact that the direct examination of such witness was erroneously excluded at the instance of the party objecting to the admission of such evidence at the second trial of such cause.

4. OPINION OF THE SUPREME COURT—*how should be considered.*
The opinion of the Supreme Court when this case was before them
on a former appeal should not be minimized in those particulars in
which it treated of a former opinion of this court but followed in
its spirit as well as its letter.

Assumpsit. Appeal from the Circuit Court of Cook County; the
Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at
the October term, 1906. Affirmed. Opinion filed October 3, 1907.

HARRY A. DAUGHERTY and MOSES, ROSENTHAL & KEN-
NEDY, for appellant; JOSEPH W. MOSES, of counsel.

FREDERICK A. BROWN and CHARLES W. GREENFIELD, for
appellee; WILLIAM R. T. EWEN, JR., of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court
of Cook county. The cause was before the Branch Ap-
pellate Court five years ago. Bennett v. Union Central Life
Insurance Company, 104 Ill. App., 402. From that court
it was taken to the Supreme Court, where the judgment of
the Circuit Court for the defendant, the Union Central Life
Insurance Company, which had been affirmed by the Appel-
late Court, was reversed. Bennett v. Union Central Insur-
ance Company, 203 Ill., 439. The cause was remanded by
the Supreme Court to the Circuit Court and was there again
tried. The trial resulted in a verdict and judgment for the
plaintiff, Rose B. Burnett (formerly Bennett) against the
Insurance Company for $3847.28. A motion for a new
trial having been overruled, judgment was rendered on the
verdict. From this judgment the defendant appealed, and
this appeal is now before us for decision.

A full statement of the facts of the case is prefixed to the
opinion of the Appellate Court—104 Ill. App., 402—and
a full statement of the pleadings is contained in the opinion
of the Supreme Court (203 Ill., 439), and therefore they
need not be repeated here. An inadvertent error (which,
however, we do not agree with counsel for appellant in consid-
ering material) in the opinion of the Supreme Court may be

properly noted. It is said therein (203 Ill., 448) that the replication under discussion stated that the tender to the insurance company of the amount of four notes held by it against the assured on March 19, 1901, was after the death of the assured, but before either of the two latter of these notes fell due. This is not correct. March 19, 1901, was after all four of the notes were due. The order on C. M. Hardy was alleged by the replication to have been drawn on and accepted by him on January 7, 1899, which was after the maturity of the first two notes and before the maturity of the last two, but the alleged collection of the judgment from which the order was to be paid and the tender of the amount of the notes to the insurance company were after the maturity of them all, as well as after the death of F. W. Bennett, the assured.

As can be seen by the opinions of the Appellate and Supreme Courts, to which we have referred, the action is by the widow (since remarried) of the assured, F. W. Bennett, on a policy of life insurance for $3,000, issued by the defendant company and payable to her.

The defense of the company was and is that the premium for the first year was never paid, and the policy by its terms was forfeited. Four notes dated June 30, 1898, were given for said premium, one payable to the order of C. W. Sampson, the agent of the defendant, who solicited and delivered the policy, for $42.19, due three months after date, two others each for $42.19, payable to the order of the defendant company six and nine months after date respectively, and a fourth for $60, payable to the order of the defendant company twelve months after date. The policy contained a condition that failure to pay any of the first three annual premiums or any notes given for any premium at maturity should nullify the policy without any action on the part of the company, and the three notes running to the order of the company contained the same provision. As nothing was ever actually paid on the premium or on these notes to the company, the company holds the policy forfeited. This view was sustained by the circuit judge before whom the case was

first tried and by the Branch Appellate Court when the case was here before. The opinion of Mr. Justice Freeman held the condition of forfeiture self-executing, and discussed the contentions of the plaintiff in and by which she endeavored to avoid the claimed forfeiture of the policy, and declared them all unsustained and unsustainable. They were that there were three lines of evidence that the forfeiture had been waived by appellant:

First. There was a letter of the defendant company to the assured, dated December 31, 1898, after two of his notes had matured, asking him to give the matter of the one due December 20th his attention "so the insurance will be protected."

As to this the Appellate Court said: "We do not regard this language as a waiver of any condition of the policy, assuming for the sake of the argument that a forfeiture could be waived by the writer. * * * The letter is not inconsistent with the view that the forfeiture of the policy is an accomplished fact. * * * But the policy contains the following provisions: 'The contract of insurance between the parties hereto is completely set out in this policy and the application for the same, and none of its terms can be modified, nor any forfeiture under it waived, save by an agreement in writing signed by the president, vice-president, secretary or assistant secretary of the company, whose authority for this purpose shall not be delegated.' If, therefore, the letter in question could be treated as an agreement in writing, waiving the forfeiture, it would be nevertheless ineffectual unless signed by one of the four specifically mentioned officers of the company. It purports on its face to be signed only by the manager of the Chicago agency."

Second. It was alleged in the pleadings (the first additional replication of the plaintiff filed June 15, 1899) that on January 7, 1899, the assured, Bennett, drew a written order on C. M. Hardy in favor of the Union Central Life Insurance Company for the amount of the four notes, to be paid out of money belonging to him which might be collected on a certain judgment in the order described; that this

order was accepted by Hardy in writing on its face; that it was delivered *to the defendant* by said Bennett and was accepted *by the defendant;* that afterwards and on March 19, 1901, Hardy tendered the full amount of the notes to the defendant.

The replication referred to had been demurred to by the defendant before the first trial, and the demurrer sustained, but it is one of the contentions in this present appeal that the facts alleged in it were competent, material and admissible in evidence under the declaration and the general issue and the special plea of forfeiture through non-payment of the notes and the traverse thereof, which remained in the case.

To prove the alleged facts the testimony of C. M. Hardy was offered at the first trial, and the trial judge admitted some parts of that offered and excluded some parts. The judge having remarked that Sampson, who solicited and delivered the policy and took the notes and turned them over to the company, had so testified, but that he did not see how that showed that Sampson was authorized to represent the company with reference to the payment of those notes, the counsel for plaintiff asked "whether he would be permitted to go ahead and show *what passed between Mr. Hardy and Mr. Sampson.*" The court ruled that this might go in, and overruling various objections allowed in evidence the statement that on January 7, 1899, at Mr. Hardy's office, by Mr. Bennett and Mr. Sampson together there was an instrument delivered to Mr. Hardy, signed by Mr. Bennett and accepted by Mr. Hardy in writing on its face, and that this paper after the acceptance was delivered to Mr. Sampson. Then in answer *to the court's question:* "Is the paper you hold in your hand a substantial copy of the paper you refer to, in the condition it was at the time you say you delivered it to Mr. Sampson?" Hardy answered in the affirmative, and the paper was marked for identification as plaintiff's Exhibit F. As appeared in the last trial it corresponded with the document set up *in hæc verba* in the replication of June 15, 1901, before referred to.

The paper (Exhibit F) was then offered in evidence and on objection by the defendant was excluded, as was also on a similar objection an answer to the question to Mr. Hardy, "Can you remember substantially what were the contents of that paper?"

The court also excluded an answer to the question to Mr. Hardy, "Did you *ever* tender to the Union Central Life Insurance Company the money as directed by you to pay to them in said writing?" but himself substituted and asked this question: "Did you tender to this company, the defendant company, or to any of its agents, in the lifetime of Mr. Bennett, any money for or on account of this policy?" to which Mr. Hardy replied that he did not.

In reference to this attempted line of proof that a forfeiture of the policy had been waived, the opinion of the Branch Appellate Court said: "So also as to the delivery to the soliciting Chicago agent of the company of the order drawn on Mr. Hardy. It had no effect to modify the terms of the policy or waive the forfeiture for the same reason if for no other. *The soliciting agent had no power so to do.* That power existed only in the officers named and could be exercised by them only by an agreement in writing."

Third.   The second replication filed June 15, 1901, set up that the three last of the premium notes had been placed in the hands of a collection agency by the defendant company, and that the company directed said agency to enforce payment of said notes by legal proceedings or otherwise, and that before the assured's death in February, 1899 (the date of the letter to 1898 in the record being self-evidently a clerical error) the collection agency by letter threatened him with such proceedings. The plaintiff offered at the first trial to make proof of this, although a demurrer had been sustained to the replication, perhaps on the theory advanced in this appeal, that proof of a waiver of the forfeiture asserted was admissible under the pleadings without the replication. The court, however, excluded the offered evidence. As to this the Appellate Court said: "The offer to prove that all the premium notes were placed in the hands

of a collection agency, that demand was made on the insured in his lifetime and suit threatened, was an offer of matters set up in replications filed by appellant to appellee's pleas. Demurrers to these replications were sustained. Appellant did not stand by the replication, but pleaded over, and went to trial on a general replication. Evidence was not admissible, therefore, under these abandoned replications, and the ruling of the court sustaining the replications cannot be assigned for error. But if it were conceded not only that all these notes were placed by the Chicago Agency of appellee in the hands of a collection agency, but that suit was actually brought thereon, facts of that character could not, under the terms of this contract of insurance, be treated as waiving the forfeiture. Such waiver could occur only in the manner which the contract provides, viz.: 'by an agreement in writing signed by the president, vice-president, secretary or assistant secretary of the company.' "

We have been thus precise and detailed in reciting portions of the record in the first appeal to this court and the comments of Mr. Justice Freeman, speaking for the Branch Appellate Court in his opinion thereon, not because they can control or affect directly our decision in the present appeal, but because, as both record and opinion were before the Supreme Court when it rendered its opinion, to be found in the 203rd Ill., we think it of great importance in interpreting for us the mind and intention of the Supreme Court in that opinion and in fixing the scope and implications of it, and, it may not be improper to say, the tendencies which we should find therein. For when, as in this case, the controversy involved has not gone off on a directly presented question of pleading alone, but there has been a trial, evidence produced, offered and ruled on by the trial judge, and finally a directed verdict, and after that a discussion of that evidence and the facts in an opinion of an intermediate court of review, which opinion is laid before the court of last resort, we cannot, as the counsel for the insurance company would seem to have us do, consider the decision and opinion of that ultimate tribunal as going no

further than the most strictly minimized meaning which can
be put on its words.  To do so would be to place this court
in the apparent position of seeking to adhere to its conclu-
sions after their correction by the higher tribunal.  It is our
duty in this case, as in all others, to follow the course indi-
cated by the Supreme Court as we understand it.  If we
have failed properly to understand it, it will be for that
tribunal to correct our interpretation on a further appeal.
We think that the Supreme Court in its opinion had fully
in mind the whole record and the opinion of the Appellate
Court above quoted.  If it did, the import of the opinion
seems to us this:  It negatived the proposition which had
been approved by the Appellate Court, that a directed ver-
dict for the defendant was proper.  It implied doubt whether
"without formal declaration of forfeiture, cancellation or re-
turn of the notes given by the assured, or other affirmative
action" on the part of the company, the policy could be con-
sidered forfeited in any event—making a hypothetical con-
cession expressly for the sake of the argument and appar-
ently suggesting its dissent from the proposition.  Then
with both the evidence that had been offered and accepted
and that which had been offered and excluded before it in
the record, and with the language before it also of the Ap-
pellate Court, which treated in one connection of the de-
livery of the Hardy order as a delivery to a mere soliciting
agent who had no power to modify or waive the terms of the
policy, and laid emphasis on this defect in Sampson's au-
thority, and in another connection spoke of the lack of au-
thority of "the manager of the Chicago agency" to exercise
a power reserved to other officers specially designated, the
Supreme Court declared (in effect) that a consideration for
a waiver was not necessary, but that the case as alleged
showed one; that a written agreement by an officer of the
company was not necessary to waive the forfeiture; that the
"attempt" in the case was "to show that the appellee com-
pany, subsequent to the issue of the policy and to the cause
of forfeiture thereof, entered into a parol agreement, the
legal consequence of which was to estop it from availing

itself of a ground of forfeiture"; that the waiver "to be en-
forced" was of a class known as implied waivers, founded
"on the general principles of common honesty and natural
justice which the law exacts of mankind in their intercourse
and dealings with one another."

It is true that strictly speaking this language was used
in the application of the principles involved to an error as-
signed on the record, that "the court erred in sustaining the
demurrer presented to the replication filed on June 15,
1901," and that afterward the court describes the "replica-
tion in question" by quoting the first additional replication
of June 15, 1901, without mentioning or discussing the
second additional replication filed also that day.  But our
inference from the omission of the opinion to allude to the
alleged fact insisted on by counsel and by the Appellate
Court, that Sampson was merely "a soliciting agent," and
by its omission to discuss the second replication, is different
from that drawn by appellant's counsel.  As to the first
omission, it seems to us that had the court considered, as
counsel say they do, the case to turn "upon the main question
of the authority of Sampson as soliciting agent to bind the
company," it would, in the interest of an end to this litiga-
tion, have treated of it in some manner under the record
as it came to it.

As to the second, it is to be noted that there was but one
demurrer filed by the defendant company to the two repli-
cations of June 15, 1901.   It was adjudged error to sustain
this demurrer, and if the Supreme Court had meant that the
Circuit and Appellate Courts were right in sustaining the
demurrer to one replication and not the other, it would, we
think, have said that.  But if its conclusion was that each
replication alleged a sufficient defense, and the plaintiff
should have been allowed to offer proof to support each, it
might have naturally considered it sufficient in the interest
of brevity to reverse the judgment on pointing out merely
one fatal error of those courts and laying down or implying
principles which in their opinion should govern another
trial.

Among those principles, we think it was implied that the evidence offered at the former trial to show the transactions between Bennett, Hardy and Sampson on the seventh of January, 1899, concerning the order on Hardy accepted by him and received by Sampson, was competent and material at that trial and should have been admitted to go to the jury, and that it was sufficient, if unrebutted or modified by countervailing evidence, to have sustained the first additional replication and at least have prevented a peremptory instruction for the defendant, if it did not indeed require one for the plaintiff.

We are aware that this reasoning on the meaning of the Supreme Court opinion falls short of an actual demonstration, but it is a conclusion deliberately formed after careful consideration. If it be incorrect, every question raised by the appellant in this appeal will be open to it again in the Supreme Court if this cause should again reach it. But with our reading of the opinion of the Supreme Court there. is no place in this opinion for a discussion of many arguments and authorities forcefully presented by the appellant's counsel, and which in its former opinion the Appellate Court approved and assented to. It would be certainly difficult to reconcile the authorities which are presented, criticised, commented on, and distinguished in the respective briefs in this cause on the legal relation to a life insurance company of an agent of the ordinary type, who solicits insurance, delivers the policies, collects at least the first year's premiums, in which he has generally a large interest, and in that capacity gets notice, through his own acts or otherwise, that the assured is relying on an implied waiver of a forfeiture which has been expressed to be self-executing. Not even the distinction, so vigorously and forcibly urged by the appellant's counsel, between a waiver of conditions preceding the delivery of the policy and one after such delivery having the actual effect, if it has any, of restoring or reinstating a cancelled contract, would make such reconciliation easy. It is not, as we understand it, the doctrine of the courts, in the latter case, that the affirmative act of the agent has the effect

of reviving a cancelled policy, but that notice to the agent that the assured is relying on some act or utterance of his, and is in consequence believing that a provision for his family is assured notwithstanding conditions to the contrary in his policy, is notice to the company which estops it, in the absence of disavowal in the lifetime of the assured, from denying the waiver and insisting on the forfeiture after the assured is dead.

There are many authorities to the contrary of this doctrine, and the Appellate Court in its former decision in this case was in accord with them, but we think it is the doctrine of the Supreme Court in this case. Moreover, we think it reasonably applied and in furtherance of justice in the case at bar. Assuming for the time a proposition which we shall discuss briefly hereafter, that the evidence admitted at the last trial to prove the transactions between Bennett, Hardy and Sampson was properly admitted, and that it was true, as the jury must have believed, we have this state of things: Sampson, an agent of the defendant company, solicited, wrote and received the application. He took and gave the receipt for the notes, signed by both the assured and the beneficiary, received as premium. He took the policy from the company and delivered it to Bennett. One of the notes was made to his own order. This the company approved, for it produced it at the trial without disclaimer, although Sampson was not present nor in the country. The company held at the trial the other notes. The company on December 31, 1898, by its general manager in Chicago, sent a notice to the assured that the second of his notes (the first one payable to the company) had fallen due and asked him to give the matter his attention so that *the insurance should be protected*. Just a week afterward Sampson appears with Bennett at Hardy's office and takes valuable security—an order running to the company (shown to be valuable by the subsequent tender to the company of money collected on it) for the note to which Bennett's "attention" had been called by the company, as well as for the notes not then due. Sampson is an agent of the company and testifies as such a

year and a half later in this cause and, five years later still has a desk in the office of the company and must, therefore, in all reason, in the absence of any evidence to the contrary, be presumed to be still connected with it. He does not appear at the second trial, however, but is out of the city, state and country. No evidence is offered that Sampson was not the agent of the company during all this time, and no testimony of any one connected with the company as an officer that it did not have the communication from Sampson of transactions between himself and Bennett in January, 1899, or did not receive the Hardy order or other security from Sampson on the notes in question. A bare assertion in an affidavit of counsel that Sampson if present would testify that no order "such or substantially such as was testified to by one C. M. Hardy, a witness at the former trial, was in fact ever drawn, accepted or delivered," is all the evidence on that subject offered. This went to the jury, it being admitted that Sampson would so testify if present. They were at liberty to weigh it against the testimony of Hardy which was admitted.

We think, if the jury believed the case made by the plaintiff's evidence, there is authority outside of the implications of the Supreme Court opinion in this case which would support the position that they had a right to believe, in the language of the modified instructions, "that there was an implied waiver by said company through its authorized agent of such forfeiture," or, in another phrasing, "by reason of notice brought to the company through its agent that the assured was relying on the continued existence of the insurance, an estoppel against its claiming, for the first time after the assured's death, a forfeiture." Phenix Ins. Co. v. Stocks, 149 Ill., 319; Phenix Ins. Co. v. Hart, 149 Ill., 513; Germania Ins. Co. v. Koehler, 168 Ill., 293; Hancock Life Ins. Co. v. Schlink, 175 Ill., 284; Milwaukee Ins. Co. v. Schallman, 188 Ill., 213.

It is insisted, however, that giving these modified instructions was error. They are said to leave questions of law to the jury. Taken by themselves they would be obnoxious

perhaps to this criticism, but in connection with the other instructions to which each of them plainly refers (3 and 4), they do not have this fault.    The instructions as asked were plainly inconsistent with the views expressed by the Supreme Court in the case, and modifications were necessary.    The acts or course of conduct which would waive the forfeiture or estop the company were given in other instructions, as we think with sufficient particularity, and the court was not bound to repeat the statement of them in the necessary limitations it was obliged to add to those offered by the defendant.    It properly referred to them.

We do not think the words "in fact or" in the modification of the second instruction add to or take anything from the meaning of the instruction.    They were probably inadvertently used.    A waiver "in fact" is not necessarily an express waiver, as appellant's argument assumes.

The instructions as modified seem to be justified by authority.    Grand Lodge v. Lachmann, 199 Ill., 140, 146; Dwelling House Ins. Co. v. Dowdall, 159 Ill., 179.    It may, however, be doubted whether they are not more favorable to the defendant corporation than the Supreme Court opinion in this case would require.    The language in which the hypothesis is put in that opinion, that the company might insist that the forfeiture was self-executing, leaves, as we have before indicated, a suggestion of dissent from the proposition.    But it was upon that theory that the case was tried below and argued here, and under it questions of some difficulty are raised.

If the burden, after the proof of non-payment of the notes before Bennett's death, was upon the plaintiff to prove the waiver or estoppel, as the instructions plainly declare, the plaintiff, to be entitled to her verdict, must have proven it, first, by the letter of Ferguson, the Chicago manager of the company, dated December 31, 1898; or, second, by the transactions between Bennett, Hardy and Sampson which resulted in the order of January 7, 1899; or, third, by proof that, as set up in the second additional replication of June 15, 1901, the defendant on February 15, 1899, placed the

three last notes in the hands of a collection agency with instructions to enforce payment.

As to the first of these lines of proof, the appellant claims that as the Supreme Court discussed only in its opinion, as a waiver, the alleged transactions concerning the Hardy order, the law of the case is laid down by the statement of the Appellate Court opinion—"We do not regard this language" (i. e. of the letter of December 31st) "as a waiver of any condition of the policy, assuming, for the sake of the argument, that a forfeiture could be waived by the writer. * * * The letter is not inconsistent with the view that the forfeiture of the policy is an accomplished fact." Therefore, appellant says, the letter of Ferguson of December 31, 1898, cannot be considered as a basis for the plaintiff's claim and the verdict. We do not agree with this. The Appellate Court, notwithstanding the language quoted, placed its decision as to this letter on the fact that the Chicago manager, and not one of certain specified officers, had signed it, and this view was expressly negatived by the Supreme Court. We do not give so narrow an effect to the decision of the latter tribunal as does the appellant. When the former judgment was reversed by it, the reasoning of the Appellate Court opinion was rejected, and as we view the circumstances of this case, that opinion had nothing left in it of value in deciding the present appeal.

We are of opinion that the letter of Ferguson of December 31, 1898, could properly be considered by the jury as "treating with the assured after the cause of forfeiture had accrued in such a manner as to recognize the policy as still in force," and therefore, in the further language of instruction 3, preventing the "insurance company from insisting upon the forfeiture." Chicago Life Insurance Co. v. Warner, 80 Ill., 410; Moreland v. Union Central Life Ins. Co., 104 Ky., 129; 2 Jones on Insurance, sections 1372–1379.

We are also of opinion that this letter was properly admitted in evidence (as it was also on the former trial), although not made the subject of a special replication. Ger-

man Fire Ins. Co. v. Grunert, 112 Ill., 68; and authorities therein cited.

We are inclined to the opinion that under the doctrine of the Supreme Court in the Warner case and in the case at bar, the contention of the appellee is correct, that the jury might, because of this letter, have been properly instructed to find a verdict for the plaintiff.   If this contention be correct, it makes no difference whether or not there were errors in the rulings on the plaintiff's other lines of evidence of waiver or estoppel.

As to the Hardy order two questions are presented.   It is said, first, that even if the testimony of Hardy was properly admitted, the order itself was not proven.   It is insisted that even though the foundation was laid for the introduction of oral evidence of the contents of this order (which is not conceded), this course was not adopted, but a "copy, not made at the time the original was drawn, not compared with the original, and not sworn to be a true, complete or correct copy of the original," was introduced.   We see no merit in this contention.   Leaving out of account the consideration that it was not the "order" itself, but the taking of security for the notes after two of them had become due, that constitutes the waiver or estoppel, the "copy" of the order was merely a convenient method of introducing the oral or secondary evidence.   It seems to us unimportant whether the witness producing a written memorandum says, "This is a substantial copy of the order I accepted," or says, "This" (reciting it) "is substantially how the order which I accepted read."

But a more serious question arises on the admission of Hardy's testimony at all.   At the first trial of the cause Mr. Hardy was offered as a witness by the plaintiff and was allowed to answer some questions asked him by counsel and the court, while many other questions were objected to and ruled out.   It was shown there had been a transaction between Bennett and Hardy and Sampson resulting in a document being signed by Bennett, accepted by Hardy and delivered to Sampson, but when an attempt was made to show

the contents of that document the evidence was excluded. The ground of exclusion was apparently one which if good for that exclusion would have been good for the exclusion of such of Hardy's testimony as was admitted. It was that the replication setting up the order and its effect had been demurred out of the case. The defendant declined to cross-examine Mr. Hardy, and now claims that in view of the ruling on the material part of his testimony there was no necessity of doing so, and in the legal sense no opportunity therefore, there being nothing on which to cross-examine.

Before the second trial, resulting in the judgment from which this appeal was taken, the Supreme Court had declared the demurrer to the replication improperly sustained, and, in accordance with the decision, the Circuit Court had overruled the demurrer and the defendant had rejoined, traversing the replication.

But in the meantime the witness Hardy had died. His testimony, however, as transcribed and preserved, and the memorandum of the contents of the order which, by his testimony admitted before, he had identified as a "substantial copy," were offered in evidence and by the trial judge admitted. This ruling is objected to by the appellant on the ground, first, that the issues were not the same on the second as on the first trial; and, second, because there was no cross-examination nor opportunity to cross-examine. These considerations, it is urged, take the case out of the rule which allows the testimony of a deceased witness to be reproduced at a subsequent trial between the same parties.

As we have indicated, the question is not without difficulty; but without discussing generally the doctrine to which the defendant cites a Virginia case (Hayes v. Mutual Protection Association, 76 Va., 225), that "when matter to which estoppel applies is specially pleaded, then the estoppel must be specially replied or it cannot avail," we will say that we do not think this case in any event a proper one for its application. Under authorities previously cited herein we think that proof of the matter set up in the replication was properly admissible under the issues which re-

mained in the case at the time of the first trial. ·The Supreme Court has said that the matter if proven showed a waiver. The court therefore was wrong in excluding it, or any part of it, at the first trial. The error was committed at the instance of the defendant. The defendant might have cross-examined Hardy as to the matter which he had been allowed to testify to, and even, if it had chosen, as to that which was excluded. It should be held to have taken the risk of the ruling made at its instance. Hardy is dead, and the only surviving member of the trio present when the order was taken, although presumably (from what appears in the testimony without explanation or contradiction) still connected with the company, was not present at the trial. We think the evidence of Hardy was properly admitted.

As to the third line of evidence which was offered by the plaintiff, that the defendant placed three of the notes in question in the hands of a collection agency before the death of Bennett, with instructions to enforce payment, it is not necessary for us to discuss the rulings on it at any length. For reasons which can be gathered from what precedes, and in the light of the Supreme Court's opinion in this case, we gravely doubt the correctness of sustaining in the first instance the demurrer to the replication, in which this was specially pleaded, the affirmation of that ruling by the Branch Appellate Court, and the refusal by one judge of the Circuit Court on March 17, 1906, and by another on May 31, 1906, to reverse it.

Moreover, we think that irrespective of the existence in the case of that replication, the evidence under the implications of the Supreme Court opinion was competent and material to go to the jury on the issues which were left.

But all this is of no importance in view of the fact that the evidence introduced was stricken out and the jury told to disregard it—a ruling with which counsel, at the time of it, expressed his satisfaction. We do not agree with appellant's counsel that the instruction was not sufficiently broad or specific for the result intended, or that the matter admitted in evidence was of the kind, if it were improperly

admitted, that would injuriously and irremediably impress the jury's minds although afterwards stricken out.

The judgment of the Circuit Court is affirmed.

*Affirmed.*