## R. Stuart Adam, Administrator, Appellant, v. The Columbian National Life Insurance Company, Appellee.

### Gen. No. 24,827.

1. APPEAL AND ERROR, § 1733*—*what questions cannot be considered on subsequent appeal.* Questions which were decided adversely to one by the decision on a former appeal cannot be reopened on the second appeal, as, on the second appeal matters decided on the former appeal bind both the parties and the appellate tribunal as far as concerns the particular case, and the operation of this rule is not affected by such facts as are presented in the appellate tribunal on the second appeal for the first time.

2. APPEAL AND ERROR, § 1734*—*when question may be considered on subsequent appeal.* On a second appeal contentions which were not involved on the former appeal may be passed upon.

3. INSURANCE, § 350*—*when payment of premiums may be waived.* The provision that a policy of life insurance will become void for nonpayment of any premium is inserted for the benefit of the insurer and the policy does not *ipso facto* become void upon such nonpayment, but the insurer may, at his option, waive such provision.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. INSURANCE, § 350*—*what constitutes waiver of forfeiture for nonpayment of premiums.* If an insurer, by any act, statement or course of conduct towards the insured, recognizes his policy as existing and valid notwithstanding his failure to pay the premium when due, and gives him further time or urges him to pay, it will be held to have waived its right to forfeit the policy for nonpayment of the premium.

5. INSURANCE, § 350*—*necessity of clear intention to enforce forfeiture.* Unless the circumstances show a clear intention of the insurer to claim a forfeiture of the policy for nonpayment of the premium, the clause providing therefor will not be enforced.

6. INSURANCE, § 350*—*when evidence shows waiver of forfeiture for nonpayment of premiums.* In an action to recover on a policy of life insurance in which defendant contends that the policy was void for failure of the insured to pay the premium when due, the fact that the note given by the insured for the premium was not canceled and sent to defendant's home office, as was its custom in case a policy lapsed; that the policy was carried on the insurer's records as live; that the insurer repeatedly made unconditional demands on the insured for payment of the note with interest (though one demand requested also a health certificate) establishes that there was no intention on the insurer's part to claim a forfeiture and establishes a waiver of the forfeiture.

7. WAIVER, § 1*—*when waiver is equivalent to estoppel.* Where all of the elements of an estoppel are present in a waiver, the terms may be used interchangeably.

8. INSURANCE, § 321*—*when waiver is distinguished from estoppel.* There may be a waiver of a condition in an insurance policy which waiver does not contain all the elements of an estoppel.

9. ESTOPPEL, § 43*—*what is essential to constitute estoppel.* To constitute the course of one an estoppel, it is essential that such course shall have been relied upon by another and that the latter shall have been induced by that course to act or refrain from acting so that he will be substantially injured if the former shall be allowed to repudiate his course.

10. INSURANCE, § 321*—*what are distinctions between estoppel and waiver.* A waiver may depend upon what one himself intends to do, without regard to its effect upon the one claiming the waiver, while an estoppel necessarily depends upon what he causes the one claiming the estoppel to do or forego, in reliance upon his course.

11. WAIVER, § 1*—*what is effect of waiver.* A waiver established by virtue of what one himself intends to do, without regard to the effect which his course has upon the one seeking to establish

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the waiver, is binding notwithstanding the elements of an estoppel are not shown.

12. INSURANCE, § 350*—*what waiver of nonpayment of premiums is founded on.* An implied waiver by the insurer of the exercise of the right to forfeit the policy for failure to pay a premium when due through his retention of and attempts to collect the note given for the premium is founded upon the doctrine, not that the insurer misled the insured to believe that his policy was in force, but that the insurer will not be heard to say that the policy was in force for the purpose of collecting the premium for a given period, and at the same time to say that it was invalid for the purpose of paying a loss incurred during such period.

13. INSURANCE, § 321*—*when insurer may not rely on forfeiture.* While an insurer is not required to do affirmatively some act to accomplish a forfeiture where it has the right to a forfeiture, it will not be permitted, on the other hand, to do an act entirely inconsistent with a forfeiture and, at the same time, claim the forfeiture.

14. INSURANCE, § 350*—*what is effect of waiver of nonpayment of premiums.* Where an insurer has waived the forfeiture of a policy for nonpayment of a premium and such is the status of the parties when the insured dies, the insurer's liability becomes fixed without regard to any tender to it of the amount of the premium, though such amount should be deducted from the amount called for by the policy.

15. INSURANCE, § 329*—*when insurer is bound by acts of agent.* An insurance company is bound by the acts of its agent, if they are within the powers he is held out to the public as possessing.

16. INSURANCE, § 350*—*when insurer is bound by cashier's acts as to waiving forfeiture.* Where the evidence shows that the cashier in one of the offices of an insurance company acted within his authority in seeking to collect from the insured the payment of his note given for the premium on his policy, the fact that the cashier's acts amounted to a waiver of the company's right to forfeit the policy for nonpayment of the premium has no effect on the question of his authority to do the things he did.

17. INSURANCE, § 323*—*when act is within apparent scope of agent's powers.* In the absence of evidence to the contrary, the act of the cashier of one of the regular agency offices of an insurance company in demanding payment of a note given for a premium on a policy issued by the company must be held to be within the apparent scope of his authority.

18. APPEAL AND ERROR, § 1810*—*when Appellate Court may enter final judgment.* On appeal by plaintiff from a judgment for de-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Adam v. The Columbian Nat. Life Ins. Co., 218 Ill. App. 54.

fendant in an action to recover on a policy of life insurance, where the facts are not involved and there are no conflicting inferences to be drawn from them, and it is held that the denial of plaintiff's motion to direct a verdict in his favor was error, judgment for plaintiff may properly be entered in the Appellate Court.

Appeal from the Circuit Court of Cook county; the Hon. VICTOR P. ARNOLD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed and judgment here. Opinion filed April 21, 1920. *Certiorari* denied by Supreme Court (making opinion final).

JOHN L. HOPKINS and DONALD J. DE WOLFE, for appellant; ALBERT L. HOPKINS, of counsel.

HOLT, CUTTING & SIDLEY, for appellee.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

The plaintiff administrator brought this action against the defendant company, seeking to recover the proceeds of a $5,000 policy of life insurance, which had been issued by the company to plaintiff's intestate. The defendant took the position in the trial court that the policy had lapsed by reason of the failure of the assured to pay an annual premium and that it could only be liable for the paid-up value of the policy on the date said premium was due, with interest from that time, amounting in all to $632.54. The issues were submitted to a jury and they returned a verdict finding the issues for the defendant. Judgment was entered accordingly, from which the plaintiff has perfected this appeal.

The annual premium, amounting to $163, was due on the 6th day of December of each year. On that date in 1911, the premium was not paid. In the following February, the assured gave the defendant his note for the amount of the premium and the defendant gave him a receipt for it reading, "the premium due as set forth below has been settled this day."

The note was dated December 6, 1911, the date the premium was due and was for a period of six months and it recited, ''this note is given with the full knowledge and intent on my part that if it is not paid when due without grace, said policy shall become absolutely null and void, subject to the legal conditions contained therein relating to cash value, paid up and extended insurance and in accordance with the conditions of this agreement without further notice.''

On the original trial of this case, the trial court excluded evidence offered by the defendant in explanation of the premium receipt given the assured in February, 1912, and directed a verdict for the plaintiff for the amount of the policy with interest. From the judgment entered on this verdict, the defendant appealed to this court and the judgment was reversed and the cause remanded for a new trial (191 Ill. App. 378). We there held that the court should have admitted the evidence which the defendant sought to introduce and that a receipt, not contained in the policy itself but purporting to acknowledge the payment of a premium other than the first, was merely presumptive evidence of payment and might be contradicted or explained by proof of other relevant facts and circumstances; that where the contract of insurance is already in force and is a continuing contract, requiring periodical payments to keep it alive and prevent forfeiture, and a receipt is given merely for the purpose of acknowledging payment of one of these subsequent premiums, a new contract is not thereby created, and there is nothing to prevent the application of the usual rule permitting receipts to be explained or contradicted by parol evidence.

On the retrial of the case the plaintiff made proof of the policy and the premium receipt for the year ending December 6, 1912, which was the receipt given the assured in February, 1912, when he executed the note referred to. Over plaintiff's objection, the de-

fendant introduced the note and also a health certificate furnished by the assured at the time he executed the note. It was shown that the note was extended a period of 60 days, making it mature August 5, 1912, and that upon such maturity the assured paid nothing on the note. In rebuttal, plaintiff introduced evidence, seeking to prove his contention that the defendant had waived prompt payment of the note and continued to treat the policy as alive and binding. It was shown that under date of August 12, the defendant's cashier wrote the assured, calling his attention to the fact that his note was due on August 5, and saying, "Kindly let us have your check to cover these items (principal and interest) and oblige." No attention being paid to this letter, the cashier wrote the assured on September 20, again calling attention to the fact that the note "is still unpaid. As this is over 30 days due, will ask that you kindly fill in the enclosed declaration of good health and return with your remittance, and oblige." Still the defendant heard nothing from the assured and again, on October 16, the cashier wrote him that his note of $163 "is still unpaid. The amount of interest on same to date is $6.79. Kindly let us have your check for the above amount."

It was further shown that it was the practice of defendant to send such premium notes to its home office in Boston when the policy was considered lapsed. Such was not done with the note in question and the policy continued to be carried on the books of the company as a live policy and not as one which had lapsed. The assured died on November 3, 1912, leaving the note unpaid.

These facts are not disputed. The plaintiff claims on the one hand that there was a waiver by defendant of any right it may have had to a forfeiture of the policy and that it had not lapsed but was in full force at the time the assured died and that the trial

court erred in denying his motion requesting the court to direct the jury to find the issues in his favor and assess his damages at the full amount of the policy, and the defendant claims on the other hand, that not only was the verdict right but that the court should not have submitted the issues to the jury but should have directed the jury to return the verdict which it did return on its consideration of the case,—and that this verdict being the only one possible on the facts the judgment should be affirmed, notwithstanding plaintiff's contentions as to erroneous instructions, in which defendant contends there was no substantial error.

In support of this appeal, plaintiff first makes certain contentions which were decided adversely to him upon the former appeal to this court. On those matters that decision is now binding in this case, both upon this court and the parties to the case, and we are precluded from again considering them at this time. *People v. Powers*, 283 Ill. 438; *Warren Land Co. v. Chicago, St. P., M. & O. Ry. Co.*, 205 Ill. App. 425. These contentions of plaintiff to which we refer are in no way affected by such facts as are presented for the first time in this court, on this appeal.

But the plaintiff makes further contentions that were not involved on the former appeal and which are therefore such as this court may now pass upon.

On the first appeal of this case to this court we said that the mere fact that the note (given the defendant by the assured in February, 1912) was not canceled and returned by defendant, when the assured failed to pay it at maturity, could not be held to be a waiver of the forfeiture of the policy, "if unaccompanied by any other fact or circumstance tending to prove that the company had retained it for the purpose of collecting it as an independent obligation." In our opinion, the evidence introduced on the retrial of the case shows such facts and circumstances accompany-

ing the retention of this note by the defendant as clearly prove that they did retain it for the purpose of collecting it.

The clause in the policy providing that it would become void for nonpayment of any premium was obviously put there for the benefit of the insurance company. The policy did not *ipso facto* become void if a premium fell due and was unpaid. In such event the company would have a right to claim a forfeiture of the policy or, if it saw fit, it might waive that right and give the assured further opportunity to pay the premium. If the company, by any act or statement or course of conduct toward the assured, recognized the policy as existing and valid and expressly gave the assured further time for the payment of the premium or urged his payment of it, it will be held to have waived its right to a forfeiture of the policy. Unless the circumstances show a clear intention to claim a forfeiture, it will not be enforced. *Chicago Life Ins. Co. v. Warner,* 80 Ill. 410; *Manufacturers' & Merchants' Ins. Co. v. Armstrong,* 145 Ill. 469; *Conductors' Mut. Aid & Benefit Ass'n v. Tucker,* 157 Ill. 194; *Illinois Life Ass'n v. Wells,* 200 Ill. 445; *Bennett v. Union Cent. Life Ins. Co.,* 203 Ill. 439. In our opinion the fact that the note was not canceled and sent to the defendant's home office, as was the custom of the defendant in case a policy lapsed; that the policy was carried on defendant's records as a live policy and not one that had lapsed; and especially the fact that defendant repeatedly made unconditional demands on the assured for payment of the amount of the note with interest (the fact that one of those demands includes a request for a health certificate does not change the situation), clearly shows there was no intention on the part of the defendant to claim a forfeiture and establishes a waiver of its right to a forfeiture of the policy. *Lane v. Yeomen of America,* 125 Ill. App. 406; *Union Cent. Life Ins. Co. v. Bur-*

*nett,* 136 Ill. App. 187; *Chicago Life Ins. Co. v. Warner,* 80 Ill. 410; *Grand Lodge A. O. U. W. v. Lachmann,* 199 Ill. 140; *Illinois Life Ass'n v. Wells,* 200 Ill. 445; *Williams v. Empire Mut. Annuity & Life Ins. Co.,* 8 Ga. App. 303, 68 S. E. 1082; *Fidelity Mut. Life Ins. Co. v. Goza,* 13 Ga. App. 20, 75 S. E. 735; *Fidelity Mut. Life Ins. Co. v. Price,* 117 Ky. 25, 77 S. W. 384; *New York Life Ins. Co. v. Evans,* 136 Ky. 391. In contending the contrary, counsel for defendant has called our attention to many authorities. The three cases cited from the reports of our own State, *Phœnix Ins. Co. v. Carlock,* 32 Ill. App. 255; *Weston v. State Mut. Life Assur. Co.,* 234 Ill. 492, and *Roberts v. Ætna Life Ins. Co.,* 212 Ill. 382, are, in our opinion, clearly distinguishable from the case at bar on the facts involved. The issue presented here was not involved in any of those cases.

In the *Carlock* case both the policy and the premium note involved, provided that if the note was not paid at maturity the policy would then become null and void and *so remain until* the note was paid in full. The note provided that in case of loss the note should immediately become due and payable and be deducted from the amount of the loss. The policy also provided that "no legal action on the part of this company to enforce payment (of the note) shall be construed as reviving the policy." The premium note involved in that case was renewed several times. It was never paid. About a year and a half after the last extension and after the last correspondence between the parties, the loss sued upon occurred. On the first trial of the case the assured recovered. On appeal to the Appellate Court for the Third District the judgment was reversed and the cause remanded for a new trial. On the retrial of the case the defendant secured a judgment and on appeal to the Appellate Court the judgment was affirmed. 38 Ill. App. 283. In that decision the court said: "Had the loss

occurred while the payment was suspended by the extensions granted · * * * another and a very different case would be presented,'' but the court held that in view of the facts involved in the case, it would not be a fair construction of the contract and the conduct of the parties to say that a waiver of the forfeiture could be implied. The court referred to the *Warner* case, 80 Ill. 410, and said it was not controlling ''because depending upon wholly different facts.'' We elsewhere refer to that case as one which does apply to the situation presented in the case at bar. On appeal from the last judgment of the Appellate Court in the *Carlock* case to the Supreme Court, that judgment was affirmed (138 Ill. 210), the Supreme Court saying: ''The case is quite different from one in which, by the terms of the contract, the failure to pay the premium works a forfeiture of the policy. In that case, since there can be no liability to pay the premium, where there is no liability upon the policy, the acceptance of the premium is an implied admission of liability upon the policy.'' It seems queer that an unqualified demand for the premium or the full amount of the premium note would have a like effect.

In the *Weston* case the loss occurred after the time covered by the note there involved had expired and after the defendant's request for a new note had been refused by the assured, the court holding that the facts showed the assured understood he was giving up the insurance. In the *Roberts'* case, term insurance was provided, for successive terms of 2 months each, and under the contract there would be no insurance for a given term until the note given for the premium for that term was paid. The court said: ''The case in this respect stands on a footing different from one in which failure to pay the premium merely gives the insurer the option to forfeit the policy and terminate the insurance. Here the insurance would not come into existence unless the payment was made,

and to bring it into existence required some act on the part of the insured equivalent to the satisfaction of the note or an extension of the time of payment.''

Likewise, the issue presented in the case at bar was not at all involved in some of those cases decided in other jurisdictions, to which counsel for defendant has called our attention. It is impossible to analyze them all here. In some of them, payment of the overdue premium note was not only demanded by the company but was refused by the assured; some of them involved provisions contained in the policy of insurance or the note which are materially different from those contained in the policy and note involved here; and in some of them the decisions are based upon a failure to properly distinguish between an estoppel *in pais* and an implied waiver. Following the latter authorities, defendant here contends that the waiver sought to be established by the plaintiff is in the nature of and equivalent to an estoppel and it is argued that the plaintiff has failed to establish it for there is no showing that the assured was misled into believing that his insurance was in force, by the demands defendant made upon him for the payment of his note after it had matured. This contention cannot prevail. There is a distinct difference between an implied waiver *such as is urged under the facts here involved,* and an estoppel *in pais.* There are, of course, different kinds of waivers. In some of them all the elements of an estoppel are present and in such instances it may be said that the terms may be used interchangeably. That was true in the case of *Phœnix Ins. Co. v. Grove,* 215 Ill. 299. In that case there was a condition in a fire insurance policy providing that it would be void if the insured procured other insurance on the property unless consent to that effect were indorsed on the policy in writing by the company. The assured did procure other insurance and notified the company he had done so. No written consent was

indorsed on the policy but the company did not exercise the right of cancellation or forfeiture, but continued to treat the policy as alive and led the plaintiff to believe they were so treating it, and it was held that the company could not avoid the payment of a loss on the ground that the plaintiff had violated the condition referred to because it had waived the condition. There the waiver involved contained all the elements of an estoppel and the two terms might be used interchangeably as the court there said *"as applied to such a case as this."*

But there may be a waiver of a condition in an insurance policy which waiver does not contain all the elements of an estoppel. *Beggs v. Supreme Council,* 146 Ill. App. 168. Where the course of one amounts to an estoppel, one of its essential elements is that such course must have been relied upon by another and the latter must have been induced by that course, to act or to refrain from acting so that he will be substantially injured if the former should be allowed to repudiate his course. 11 Amer. & Eng. Encyc. of Law, pp. 387, 421 and 436; *Powers v. Wells,* 244 Ill. 558. But the conduct of the company may be less than that and yet amount to a waiver of its right to the forfeiture of a policy. It is generally true that the term "waiver," besides implying an intention on the part of the company (applying the principle to the situation before us) to relinquish a right, which is not necessarily present in an estoppel, refers only to the act or the consequence of the act of the company, —the party against whom the waiver is sought to be enforced,—regardless of the attitude assumed by the other party (the assured) whereas estoppel *in pais* arises where, by the fault of one party (the company) another (the assured) has been induced, ignorantly or innocently, to change his position for the worse, in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has

been misled (the company) to assert the right in controversy. 29 Am. & Eng. Encyc. of Law, 1092. In other words, a waiver may depend upon what one himself intends to do, without regard to its effect upon the one claiming the waiver, while an estoppel necessarily depends upon what he causes the one claiming the estoppel to do or not to do, in reliance upon his course. There is a clear distinction between that kind of a waiver and an estoppel, and where such a waiver is made out, the defendant will be held liable although the elements of an estoppel are not shown to be present. There are numerous examples of it in the decisions of our courts in insurance cases. An implied waiver of the exercise of the right to a forfeiture under the terms of an insurance policy, under such facts as are involved here, is founded upon the doctrine, not that the company has misled the insured into a belief that his policy was in force, but that the company will not be heard to say that its contract is valid for the purpose of collecting the premium for a given period, and at the same time assert that it is invalid for the purpose of paying a loss incurred within that period. It will be remembered that the note defendant was seeking to induce the assured to pay, when it sent its communications referred to, covered the premium for the year up to December 6, 1912; and that the insured died in November of that year.

In *Cox v. American Ins. Co.*, 184 Ill. App. 419, which was a fire insurance case, the acts of the company which the court construed as a waiver on its part to declare a forfeiture of the policy took place after the loss had occurred, of which latter fact the company had full knowledge. The court said in discussing the waiver there involved: "A waiver of a breach of a condition of a policy, does not require the company to do anything to the disadvantage of the assured." In *Illinois Life Ass'n v. Wells*, 200 Ill. 445, the same situation was present except that it does not

appear in that case that the company knew the assured was dead when they made the statements and committed the acts that the court construed as a waiver, but the court said in that case that whether the company knew that the assured had died or not could make no difference as to the competency of the testimony going to establish the facts constituting the alleged waiver or as to its legal effect. Also in *Chicago Life Ins. Co. v. Warner,* 80 Ill. 410, the things which the court held amounted to a waiver on the part of the company or its right to declare a forfeiture of the policy, took place after the loss had occurred. In none of these cases was an estoppel established or involved but in all of them the courts held the defendant had waived its right to a forfeiture.

The case of *Schimp v. Cedar Rapids Ins. Co.,* 124 Ill. 354, is one in which the facts involved were not such as are presented here, for in that case the facts relied upon by the plaintiff to constitute a waiver by the company of a forfeiture of the policy, occurred long after the risk under the policy had terminated and after defendant had refused payment of the loss, and the court held that the facts in question did not constitute a waiver by the company and that the doctrine of waiver did not apply to the facts in the case. But the court, in that case, announced in clear terms the nature of the sort of waiver that is here being urged. The court referred to it as an implied waiver and said:

"This class of waivers is frequently to be met with in the law of insurance. Thus, where the assured has been guilty of some breach or breaches of the conditions of the policy, and the insurer, with full knowledge thereof, during the pendency of the risk, accepts a maturing premium, or does any other act recognizing the continued existence and validity of the policy, such acceptance or other act will operate as a waiver of the right of forfeiture occasioned by said breaches, unless something appears to show that it

was not intended to have that effect, and that the assured so understood it. This well recognized rule in the law of insurance is founded, at least in part, upon the fundamental principle, that one having the exclusive right to terminate an executory contract, must abrogate it altogether, if at all. He cannot be heard to say it is valid for one purpose, and, in the same breath, that it is invalid for all other purposes, but it is founded chiefly upon the general principles of common honesty and natural justice, which the law exacts of mankind in their intercourse and dealings with one another.''

The court then proceeded to say, as we have already pointed out, that the doctrine of waiver had no application whatever to the facts of that case, and also held that the facts were not such as to create an estoppel against the company and in that connection the court used the following language, to which the defendant in the case at bar has called our attention (p. 357): ''The waiver or estoppel relied on cannot prevail. It is destitute of that element which is most essential to either. It does not appear, nor is it claimed, that the assured has been misled in any manner, to her prejudice, by the company accepting payment of the note.'' In announcing this as an element of waiver generally, as well as of estoppel, the court was hardly consistent with the language it had previously used in the same opinion, which language we have quoted above.

Counsel for defendant have also called our attention to *Northwestern Mut. Life Ins. Co. v. Amerman,* 119 Ill. 329; *Dwelling House Ins. Co. v. Dowdall,* 159 Ill. 179; and *United States Life Ins. Co. v. Ross,* 159 Ill. 476. In these cases the facts were such as to create an estoppel. Counsel have also called our attention, in this connection, to *Weston v. State Mut. Life Assur. Co.,* 234 Ill. 492, and *Phœnix Ins. Co. v. Grove,* 215 Ill. 299. In the *Weston* case the facts were entirely different from those involved here. The as-

sured gave the agent of the company his note to cover the premium for a specified period but failed to make any provision for the period following, during which the agent wrote him urging him to do something about it. The court pointed out that the assured did nothing further to keep his insurance in force and that the evidence showed nothing to indicate that he thought that it was in force. The court also held that the waiver of the payment of premiums by a company for a specified time is only valuable to the insured when payment is made or a loss occurs within that time. In the case at bar the loss did occur within the period for which the waiver is shown to have been made. The *Grove* case has already been referred to. It will be seen that in that case the facts set up were such as to amount to an estoppel.

In our opinion these cases cannot apply to the facts now before us. Here we have the company accepting the note of the assured, and giving him its receipt therefor, reciting that the premium on his policy for a given year has been "settled" and following his failure to pay the note at maturity we have the insurance company making these demands in writing for the full amount of the note with interest, one of these demands mentioning a health certificate and two of them being entirely without any such condition or reference, and then we have the death of the assured, —all occurring within the period covered by the premium in question. We hold that the doctrine of waiver, *as applied to such a case as this* (which is entirely different from those just referred to), is *not* that of estoppel *in pais*. Although it was not shown that the deceased postponed his payment of the note, in reliance upon a belief on his part that, because of the conduct of the defendant, it would not insist upon a forfeiture and although therefore an estoppel *in pais* is not made out here, nevertheless the facts do establish a waiver on the part of the defendant of the for-

feiture of the policy. While the defendant is not re-
quired to affirmatively do some act to accomplish a
forfeiture, where it has the right to a forfeiture, it
on the other hand will not be permitted to do some
act entirely inconsistent with a forfeiture and at the
same time claim the forfeiture,—it cannot at one and
the same time take the position both that the policy
is in force, by demanding payment of the note, repre-
senting the premium for the full year and also that
the policy is not in force by refusing to pay the amount
it calls for when a loss occurs within that year.

In *Freise v. Metropolitan Life Ins. Co.*, 206 Ill. App.
404, the court said that forfeiture of life insurance
policies are not favored and will never be enforced
*unless the evidence is clear that such was the intention.*
While in that case the court holds that where the con-
duct and dealings of the insurance company with the
assured is such as to induce the assured to believe
that a forfeiture will not be insisted upon, the com-
pany will be estopped from taking advantage thereof,
it also holds that where it appears that, after the
death of the assured, the beneficiary paid an overdue
premium at the office of the company without saying
anything about the death, and where the policy had not
then been forfeited, the company would be liable. The
latter holding of the court is based on the ground of
a waiver by the company, and it will readily be seen
that it in no way involved the elements of an estoppel,
inasmuch as the facts constituting the waiver hap-
pened after the assured had died. The court gives
as its reason for the latter ruling, the fact that the
circumstances referred to were evidence that the com-
pany was not relying upon the failure to make prompt
payment of the premium as a forfeiture of the policy.
We have already referred to a number of other cases
in this State where the facts were such that no estop-
pel could have been involved and yet the court held

that a waiver on the part of the company was established.

The company having waived the forfeiture of the policy, and such being the status of the parties when the loss occurred, the company's liability became fixed without regard to any tender to it of the amount of the premium. The amount of the premiums should, of course, be deducted from the amount called for under the policy, as the language of the policy itself provides.

There is a further contention that the authority of the cashier in the Chicago office of the company, who wrote the assured the letters demanding payment of the note, was not such that his acts could amount to a waiver,—that he had no power or authority to waive a forfeiture. This contention is untenable. An insurance company will be bound by the acts of its agent, if within the powers he is held out to the public as possessing. *Phenix Ins. Co. v. Hart,* 149 Ill. 513; *Phenix Ins. Co. v. Stocks,* 149 Ill. 319; *Continental Ins. Co. v. Ruckman,* 127 Ill. 364; *Electric Life Ins. Co. v. Fahrenkrug,* 68 Ill. 463; *Manufacturers' & Merchants' Mut. Ins. Co. v. Armstrong,* 45 Ill. App. 217; *Hodges v. Bankers' Surety Co.,* 152 Ill. App. 372. The evidence clearly shows that the defendant's cashier had full authority to do all he did in this case. The fact that his actions amounted to a waiver on the part of the defendant can have no effect on the question of his authority to do the things he did do.

If the cashier of one of the regular agency offices of such a company makes demand for the payment of a premium note, such action on his part, in the absence of evidence to the contrary, must be held to be within the apparent scope of his authority and such demand will be given its full legal effect.

In our opinion the trial court erred in overruling plaintiff's motion to direct a verdict in his favor for the amount of the policy, $5,000, with interest

thereon at 5 per cent from December 5, 1912, the date proof of death was duly made, less the amount of the note with like interest thereon from December 6, 1911 to November 23, 1912, the date on which the evidence shows the plaintiff tendered payment to defendant on the note.

We are of the opinion that in such a case as the one at bar this court, upon reversing the judgment of the trial court, has the power to enter judgment here. The facts involved are not disputed and there are no conflicting inferences to be drawn from the facts. In *City of Spring Valley v. Spring Valley Coal Co.*, 173 Ill. 497, it was held that this court had erred in entering judgment for the plaintiff upon a reversal of the judgment of the trial court for the defendant, as such judgment for the plaintiff, entered in this court, took away the right which the defendant had to a jury trial but in that case this court entered its judgment for the plaintiff on a finding of facts. By referring to the opinion of this court in the case cited (72 Ill. App. 629), it appears that in the trial of that case the plaintiff did not make a motion requesting the court to direct a verdict in its favor but, nevertheless, this court held that there being no controverted question of fact in issue "the trial court would have been entirely justified in directing a verdict for the plaintiff and no doubt would have done so if asked" and that in such a case this court could not be said to invade the province of the jury in rendering judgment for the plaintiff. But on appeal to the Supreme Court, that court said on this point, that although the plaintiff might have obtained a directed verdict in the trial court, it in fact did not make the motion for a directed verdict and stated that if the plaintiff "had done so the question presented would have been a different one from that presented under this finding of facts," and in that situation the appellant might have had the proposition reviewed in

the Supreme Court. The court goes on to say: "The right of a trial court to direct a verdict is one of the incidents of a trial by jury. The motion for such a direction raises a question of law, and the fact that a question of that kind might have been raised does not justify an assessment of damages upon a finding of facts. If it had been raised it could be reviewed in this court, while if judgment might be entered, as was done in this case, *upon the finding of facts*, plaintiff would be deprived of the right to a review in this court."

In the case at bar, the question of whether, on the admitted facts, the plaintiff was entitled to a directed verdict, as a matter of law, was raised, because the plaintiff did make his motion requesting the trial court to direct the jury to return a verdict in his favor, and inasmuch as we hold that the court erred in denying that motion, we are of the opinion that judgment for the plaintiff should be entered here. That course was followed in a similar situation in *Dean & Son v. W. B. Conkey Co.*, 180 Ill. App. 162.

For the reasons stated the judgment of the circuit court is reversed and judgment for plaintiff is entered here for the amount of the policy, $5,000, with interest at 5 per cent from December 5, 1912, to the date of the judgment here, $6,843.93, less the amount of the note, $163 with interest at 5 per cent from December 6, 1911 to November 23, 1912 ($170.87), or the total sum of $6,672.86.

*Judgment reversed and judgment here.*

MR. JUSTICE O'CONNOR especially concurring:

I agree with the conclusion reached but not with what is said as to the distinction sought to be made between waiver and estoppel. It has long been held in this State, as applied to the law of insurance, that the two terms are used interchangeably. In *Phœnix Ins. Co. v. Grove*, 215 Ill. 299, Mr. Justice Cartwright in delivering the opinion of the court said (p. 302):

"The doctrine of waiver, as applied to such a case as this, is that of estoppel *in pais*. There is no substantial distinction between the two, and the terms are used interchangeably, a waiver being only another name for estoppel." Citing *Dwelling House Ins. Co. v. Dowdall*, 159 Ill. 179, and 16 Amer. & Eng. Encyc. of Law (2nd Ed.) 935. In the latter citation the author says: "In many of the decisions attempted distinctions have been made between a waiver and an estoppel, it being contended that an implied waiver may arise from acts or conduct on the part of the insurer which do not create a technical estoppel. But it seems to be the prevailing opinion that the doctrine of waiver as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies is only another name for the doctrine of estoppel." As authority for this proposition the case of *Globe Mut. Life Ins. Co. v. Wolff*, 95 U. S. 326, is cited. In that case Mr. Justice Field speaking for the court said: "The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel."

MR. JUSTICE TAYLOR concurring:

I am in accord with the conclusion, but do not agree with the Presiding Justice on the subject of waiver and estoppel.