GERTRUDE CURTIS WESTON, Appellant, vs. THE STATE MU-
TUAL LIFE ASSURANCE COMPANY, Appellee.

*Opinion filed April 23, 1908—Rehearing denied June 5, 1908.*

1. APPEALS AND ERRORS—*when party cannot object that defense of forfeiture must be specially pleaded.* A plaintiff in an action on an insurance policy cannot urge, on appeal, that the defense of forfeiture must be specially pleaded, where no such objection was made below and where no evidence was introduced by the defendant, a verdict in its favor being directed at the close of the plaintiff's evidence.

2. INSURANCE—*effect of waiver of payment of premium for a specified time.* The waiver by an insurance company of the payment of premium for a specified period is valuable to the insured only where he makes payment, or a loss occurs, within such time.

3. SAME—*when recovery cannot be had on policy.* No action can be maintained on an insurance policy where it appears that the insured, being unable to pay the first premium, or his note to the agent thereafter given, wrote the agent saying he would have to give up the insurance, and, after receiving a letter from the agent suggesting a plan for keeping up the insurance, held no communication with the agent or the company before the agent had returned the renewal receipts to the company and the company had marked the policies lapsed.

4. SAME—*when fact that policy is reported in force is without effect.* The fact that an insurance policy is reported by the company to the State insurance commissioner as being in force at a certain date does not amount to an admission which may be availed of by the beneficiary, where it appears that at the time of the report renewal receipts had been sent to the agent, but that these were returned to the company later and the policy marked lapsed.

5. SAME—*when defenses are not restricted to reasons given for non-payment of policy.* In an action on an insurance policy the company is not restricted in its defense to the reasons assigned in the refusal to pay, if it does not appear that the plaintiff has been misled or influenced to his injury by the omission or failure to set forth other reasons.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. FROST, Judge, presiding.

This is an action in assumpsit in the superior court of Cook county on two policies of insurance, of $3500 each, written by the appellee company on the life of Edward S. Curtis for the benefit of appellant, then his wife, but who has since re-married. Curtis was an old friend of O. K. Clardy, general agent for the appellee company at St. Louis, Missouri. It was agreed that Clardy should give Curtis credit for part of his commission on the first year's premium, and that when the policies were forwarded by Clardy to Curtis at Chicago the latter was to send his check for the first premium. The quarterly payment on the two policies was $58.80. The following letter enclosing the two policies was sent July 5, 1899, by Clardy to Curtis: "Herewith find two policies, for $3500 each, insuring your life in the best company in the world. * * * Take the policies and keep them in force * * * and send me your check for $41.16, which will be the amount you will send me quarterly during the first year of the policy." Curtis did not send the check. In answer to a letter of Curtis dated July 25, (not appearing in the record,) Clardy wrote on July 26: "I have advanced the company the amount due it on your policies and can wait on you until the 15th, and if it would be of any particular value to you I could wait until the 23d of August. If you can get it to me at the earlier date it would, of course, be an accommodation, for it is to go to swell my own private funds, which are none too inflated at the present moment." On August 16 Clardy wrote again: "For fear that you might overlook it, I write to ask you to get your check to me on the morning of the 24th, as on that date I will need the money in making settlement with the company. I have advanced the money for your policy in my former settlement, and your remittance is needed to settle up balance I will owe on the 24th." It was the rule of appellee for Clardy to remit within sixty days on new business written or else return the item, and he decided to pay the money, which was $23.52, the amount due the company out

of the $41.16. On August 23 Curtis stated in a letter to Clardy: "I am much embarrassed by being in a place where I cannot meet my obligation with you. I expected to have three or four hundred dollars at this time, but it has been delayed. * * * I enclose you thirty-day note. If you can use same will take care of it when due." Enclosed was the thirty-day note for $41.16, with interest at seven per cent. October 3 Clardy sent the following letter, referring to the note being unpaid, to Curtis: "Have you forgotten me? Yours, etc." October 25 Clardy wrote to Curtis: "Of course, you are aware that your note of last August, for $41.16, has been overdue for more than a month, for I have sent you several letters, which have been unnoticed, calling your attention to the fact, and in addition you gave the note and therefore know that it is past due. I know of no reason why you have not paid it, for I have had no line from you, and I would be pleased to have a check in settlement, as just that sum of money is needed by me. Shall I hear from you soon?" November 3 Curtis wrote to Clardy: "I have not forgotten you or my obligation. Have had no end of trouble and sickness. Have been away, then sick, etc. Mother had a second attack of paralysis. Expenses large. Wife then sick. Following that, my oldest boy, now my second boy and little Sarah. Salary was not increased, as agreed. I am in close quarters all around, and just at present I don't know which way to turn. Will be obliged to give up insurance, for I cannot pay for same as I am now situated. When I applied all looked rosy. It is quite different now. What shall I do? Suggest something. What I owe you I will pay. With great regard, yours," etc. November 6 Clardy replied to Curtis: "I have your letter and regret that you find yourself in no condition to pay the note, the better part of which, as you know, represents cash which I have advanced for you. * * * Now as to the insurance. I am, of course, anxious to get my good money and I would like to keep this

amount I have written on you in force. If you can send me $25 in cash and your note for $17 I will send you receipts keeping this insurance in force until December 30 and will wait a reasonable time for you to pay the notes. Now, let me know what you can do. You should by no means let this chance go by to keep insured. Your family needs the protection." Clardy, on December 1, in writing to Curtis about another matter, closed that letter as follows: "You never said what you would do with my last proposition regarding your own insurance. Can't you look up that letter and give me an answer? I think you ought to accept it if it is possible for you to do so." Curtis did not reply to either of these last two letters. January 11 Clardy wrote to Curtis: "Cannot you do something for me on your note for $41.16? While money is always needed at our house, yet right now it would be more than ever appreciated as there is a place needed to be filled." On January 13 Curtis wrote from Glenwood, Iowa, this reply on the bottom of the Clardy letter: "The above reached me here. I will be home on the 23d. I hope at that time to have some money so that I can pay whole or part."

The renewal receipts mentioned in Clardy's letter of November 6 for the quarter ending December 30 were sent to Clardy by the appellee company previous to September 30. These receipts were returned by Clardy to the company at Worcester, Massachusetts, the first part of January, 1900. They were received by the company January 16, 1900, and the policies marked on their books "Lapsed" as of September, 1899. Curtis died January 31, 1900. W. C. Johnson, a brother of appellant, testified that shortly after Curtis' death he called at Clardy's office, in St. Louis, and asked him about the insurance Curtis carried with the company; that Clardy stated that Curtis carried a policy of $7000; that he had written to him shortly before his death and that Curtis had replied on the bottom of the letter; that thereupon Clardy took the letter from his desk, and, rest-

ing it on his knee, read it; that the letter, to the best of his recollection, was a request for the payment of a certain note, and also Clardy wanted to know what Curtis was going to do about keeping the policy in force and the payment of the premium then due and to become due; that Curtis wrote on the bottom of the letter that he intended to pay the note and the premiums that were due; that he thought Clardy's letter was dated January 23 and Curtis' reply dated January 26. Clardy testified that he could find no such letter, and that if one was written it referred only to the payment of the note owed him by Curtis.

The two policies in evidence were, except for their numbers, alike, and made payable to appellant, the wife of Curtis at that time, on satisfactory proof of Curtis' death during the continuance of the policy. The parts that are material, so far as this case goes, on the face of the policy are: "This contract is made in consideration of the representations and agreements made in the written and printed application of the insured, which is made a part of this contract. * * * And in further consideration of the sum of $29.40 to be paid in advance, and of the payment of the quarter-annual premium of $29.40 on the thirtieth day of June, September, December and March in every year during the continuance of this policy. * * * This policy shall be incontestable after two years from the date of its issue, provided the premiums shall be paid as agreed." And annexed to the policy was the following: "This policy is issued subject to the general laws of Massachusetts applicable thereto. * * * No agent has authority to modify or change this contract in any way. Premiums are due and payable at the office of the company in Worcester, Mass. * * * Notifications of premiums becoming due are regularly sent to the insured, but without any agreement on the part of the company to do so and without any responsibility for their omission or miscarriage."

The declaration consisted of six counts. The first and fourth averred that in consideration of $29.40 the appellee promised to pay to the plaintiff $3500 on receipt of satisfactory proof of the death of Edward S. Curtis; that after his death such proof had been furnished in accordance with the policies. The second and fifth counts, after reciting the amount of the policies, set forth the amount of the quarterly premium and the fact that Curtis had delivered the note as heretofore set forth in the statement; that the appellee company had accepted the note as first payment, and the time had been extended on that account to February 14, 1900. The third and sixth counts, after practically setting out the same state of facts as was set out in the second and fifth, continued that appellant was entitled to a dividend of the *pro rata* share of the profits of the company; that there had been no notice of the maturity of the premiums and that no forfeiture had been made or attempted by the appellee company, and that therefore said company waived payment, in cash, of the premiums in question; also reciting that on December 31, 1899, the appellee reported to the Massachusetts insurance commissioner that the said policies were in good standing. To this declaration appellee filed a plea of general issue. After the evidence had been introduced by appellant, substantially as heretofore set forth, and her case had been closed, appellee moved that the jury be instructed to find for the defendant, which instruction, after arguments of counsel, was given and a verdict returned accordingly. Motion for new trial was overruled and appeal prayed to the Appellate Court, where the judgment of the superior court was affirmed. From that judgment an appeal has been taken to this court.

EDMUND H. SMALLEY, for appellant.

EDWARD R. WOODLE, and CODY & EATON, for appellee.

234—32

Mr. Justice Carter delivered the opinion of the court:

Appellant contends that the defense of forfeiture of an insurance policy must be specially pleaded. Without passing on that question, it is sufficient to say that all the evidence heard on the case was offered by the appellant, and therefore she is in no position to urge that the defense of forfeiture cannot be proven under the general issue. Moreover, no question of this kind was made at the time of the trial, and even though the evidence in question had been introduced by appellee, an objection to the admission of the evidence on the ground of variance would be regarded as waived unless specifically made on that ground and the objection pointed out in the trial court, in order that an opportunity should be given to amend the pleadings and obviate the objection. *Traders' Mutual Life Ins. Co.* v. *Johnson,* 200 Ill. 359; *Pettis* v. *Westlake,* 3 Scam. 535; *Winchester* v. *Rounds,* 55 Ill. 451.

The most serious contention of appellant is, that the trial court erred in instructing the jury to find a verdict for appellee; that, regardless of the letters as to the payment of premium passing between Clardy and Curtis, to render these policies invalid or unenforceable there must have been, during the lifetime of Curtis, an affirmative act of forfeiture or of disavowal on the part of the company, followed by notice to the assured. The policies in question contain no specific provision as to their being lapsed or forfeited for the non-payment of premium. Appellee contends that these policies lapsed on September 30, 1899, by the non-payment of the quarterly premiums. The testimony in the record tends to show that if Curtis had paid the quarterly premium after September 30 and before December 30, 1899, it would have been necessary for him to furnish, at his own expense, a health certificate before the premium would have been received and the policies continued in force. While the evidence is not entirely clear on this last point, we think it shows conclusively that after December 30 Curtis would not

only have had to furnish a certificate showing he was in good health, but that action would also have been required on the part of the company before the policies would have been considered in force, according to the rules of the company. This court has never decided the question of forfeiture raised on this record. In several cases policies have been construed which provided for forfeiture on failure to pay the premium.

Appellant contends that the payment of the quarterly premium was a condition subsequent, while appellee insists it was a condition precedent. There is also a dispute between appellant and appellee as to whether this policy, under the ruling of the court, lapsed or should be held to have been forfeited. We do not think it is necessary to discuss either of these questions or distinguish as to the meaning of these words and phrases in order to reach a decision in this case. Manifestly, from the correspondence between Curtis and Clardy, especially in the light of Curtis' letter of November 3, it must be held that Curtis understood that he was giving up the insurance. He was distinctly told in Clardy's letter that the insurance could be kept in force in a certain way, and from that date until the renewal receipts were returned by Clardy to the company and these policies in question were marked on the books of the company as lapsed, Curtis never communicated with the company or its agent, or did anything to indicate that he wanted to keep the policies in force or thought they were in force. We think the conclusion is inevitable that by his own action he waived the right to have further notice from the company, even though it be admitted that the law required notice to be given him. Construed most favorably to appellant, the evidence would require that Curtis, under the offer given him in the letter of Clardy, must have complied with the conditions in Clardy's letter previous to December 30, 1899, in order to have kept the policy in force up to that date. The waiver of the payment of premiums by a company for

a specified time is only valuable to the insured when payment or a loss occurred within that time. (*United States Life Ins. Co.* v. *Ross,* 159 Ill. 476.) Even though Clardy wrote January 23, 1900, as testified by Curtis' brother-in-law, Johnson, the policies being no longer in force could not be brought again into force by this letter of Clardy, notwithstanding he was general agent, without some action on the part of the company itself.

In connection with the question just considered, appellant vigorously insists that the report made by the appellee company to the insurance commissioner of Massachusetts, and filed February, 1900, showing that these policies were in force December 31, 1899, was such an admission that the policies in question had not lapsed that the case ought to have been submitted to the jury. Witnesses for the company testified, on this point, that the report to the insurance commissioner of Massachusetts included all policies for which renewal receipts sent out to agents had not been returned and the exact status of which the home office was not prepared to decide upon; that such policies were included to keep on the safe side of the Massachusetts law, and that the company so construed that law as to extend its application to any case in which there was any doubt. With this explanation concerning the report, its purpose and object, it furnished no evidence which in any way affected the contract of insurance between appellant and appellee. This act of the company did not in any way affect the actions of Curtis. He was not led to do or omit to do anything which he would otherwise have omitted or done. It is the agreement between the company and the assured that affects the question of waiver or payment of premium. The fact that the policies in question were included in this report is therefore, in our judgment, of no material weight or relevancy.

The president of the appellee company, in response to a letter from appellant's counsel, wrote after Curtis' death,

among other things, "that nothing was ever paid on the policy, and therefore there was never any completed contract between Edward S. Curtis and this company." It is contended by appellant that this declaration of the president estops appellee from now defending by claiming forfeiture on account of the non-payment of premiums. An insurance company is not restricted in its defense, in an action on a policy, to the reasons assigned in its refusal to pay, if it does not appear that the plaintiff has been misled or influenced to his injury by the omission or failure to set forth other reasons. (19 Am. & Eng. Ency. of Law,—2d ed.— p. 106, and cases cited.) The reasoning, also, of this court in *Roberts* v. *Ætna Life Ins. Co.* 212 Ill. 382, tends to uphold this conclusion, and nothing appears in *Phenix Ins. Co.* v. *Stocks,* 149 Ill. 319, or *Traders' Mutual Life Ins. Co.* v. *Johnson, supra,* or the other cases cited by appellant, in conflict with such holding.

Appellant has, under many heads and subdivisions, in an exhaustive brief discussed various questions wherein it is claimed the court erred. We have not attempted to follow the order of the briefs in discussing the questions involved. We think, however, in what we have already said we have covered substantially all the material points raised. Some contentions as to the court's refusal to admit evidence are not borne out by the record. Taking into consideration all the evidence offered by appellant, whether it was admitted or rejected by the trial court, we do not think any or all of it fairly tended to support appellant's cause of action. The trial court ruled correctly in instructing the jury to find for appellee.

We find no reversible error in the record, and the judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*