### GENERAL CASUALTY & SURETY CO. v. KIERSTEAD.
#### No. 9715.

Circuit Court of Appeals, Eighth Circuit.

Nov. 8, 1933

George L. De Lacy, of Omaha, Neb. (J. A. C. Kennedy and Yale C. Holland, both of Omaha, Neb., on the brief), for appellant.

M. S. McDuffee, of Norfolk, Neb. (Thomas I. Purcell, of Colorado Springs, Colo., on the brief), for appellee.

Before GARDNER and VAN VALKEN-BURGH, Circuit Judges, and DEWEY, District Judge.

GARDNER, Circuit Judge.

Appellant, defendant below, issued to one F. L. Michaels, Jr., its automobile liability policy, by which it agreed to insure Michaels against the liability imposed by law upon him for damages on account of bodily injury suffered by any person as a result of the use of insured's automobile, and to pay and satisfy judgments finally establishing insured's liability in actions defended by the company, subject to limitations as to amount not here important, and subject to the condition, among others, that: "The Assured shall not interfere in any negotiation for settlement, nor in any legal proceeding, but, whenever requested by the Company, and at the Company's expense, the Assured shall aid in securing information and evidence and the attendance of witnesses, and shall cooperate with the Company (except in a pecuniary way) in all matters which the Company deems necessary in the defense of any suit or in the prosecution of any appeal."

While this policy was in full force and effect, the insured, Michaels, had an automobile accident while driving the car covered by the insurance policy, inflicting personal injuries upon the appellee, G. E. Kierstead. Kierstead thereupon sued the insured for damages on account of his personal injuries, claiming that his injuries resulted from the negligence of the insured in operating the automobile. The attorneys for the appellant undertook the defense of the action, which resulted in a judgment in favor of Kierstead and against insured for $6,660. The judgment not having been paid, execution was issued against Michaels and returned unsatisfied, and thereupon appellee brought the present action based upon a provision of the policy to the effect that: "The insolvency or bankruptcy of the named Assured shall not release the Company from payment of damage sustained or loss occasioned during the life of the policy, and if execution against the named Assured in an action for damages is returned unsatisfied because of such insolvency or bankruptcy, the injured, or his personal representative in case of death, may maintain an action against the Company for the amount of judgment obtained not exceeding the limits of the policy."

The appellant defended the instant suit on the ground that there was a breach of a condition vitiating the policy, in that the insured had failed, neglected, and refused to co-operate with the insurance company in the defense of the action brought by Kierstead, it being alleged that he refused to furnish information concerning witnesses and the details of the accident; that he refused to answer correspondence and wires sent to him; that he purposely refused to advise defendant of his whereabouts; and that he refused willfully and purposely to attend the trial, although requested so to do.

At the close of all the testimony, the court directed a verdict in favor of the plaintiff and against the defendant for the amount claimed, together with interest and attorney fees.

To avoid confusion, we shall now refer to the parties as they were designated in the court below.

From the judgment entered on this verdict, defendant has appealed. The action of the court in directing a verdict in favor of the plaintiff is the sole error relied upon.

As has been observed, it is the contention of the defendant that insured committed a breach of the condition of the policy requiring him to co-operate with the defendant in the defense of the original action. The condition of the policy requiring co-operation by the insured is in the nature of a condition precedent to liability on the company's part for the loss growing out of a claim with the disposition of which the insured's co-operation is demanded. In order that the insured may be entitled to recover, he must substantially have performed all the material conditions of the contract which are made conditions precedent to any liability on the part of the insurance company. The right of the injured party to proceed against the insurer is dependent upon the provisions of the insurance contract. He can acquire no greater right thereunder than that existing in favor of the insured. In other words, if the conduct of the insured has been such as to bar him from right of recovery under the contract, then the injured party is likewise precluded from recovery. Royal Indemnity Co. v. Morris (C. C. A. 8) 37 F.(2d) 90; Coleman v. New Amsterdam Casualty Co., 247 N. Y. 271, 160 N. E. 367, 369, 72 A. L. R. 1443; Seltzer v. Indemnity Ins. Co. of North America, 252 N. Y. 330, 169 N. E. 403; United States Fidelity & Guaranty Co. v. Williams, 148 Md. 289, 129 A. 660; Francis v. London Guarantee & Accident Co., 100 Vt. 425, 138 A. 780; United States Casualty Co. v. Breese, 21 Ohio App. 521, 153 N. E. 206; Bachhuber v. Boosalis, 200 Wis. 574, 229 N. W. 117.

In Coleman v. New Amsterdam Casualty Co., supra, the Court of Appeals of New York, in an opinion by Chief Justice Cardozo, now Mr. Justice Cardozo of the Supreme Court, in discussing the effect of a New York statute similar in its provisions to the provision contained in the indemnity policy in the instant case, said: "The effect of the statute is to give to the injured claimant a cause of action against an insurer for the same relief that would be due to a solvent principal seeking indemnity and reimbursement after the judgment had been satisfied. The cause of action is no less but also it is no greater. Assured and claimant must abide by the conditions of the contract."

It seems to be well established, both in reason and on authority, that the injured person must stand in the shoes of the insured, and can only recover when the insured has substantially complied with the conditions of the policy, or when compliance therewith has been waived. It is, therefore, necessary to consider whether the insured failed to comply with the provision of the policy requiring him to co-operate in the defense of the action against him.

The defense is an affirmative one pleaded by the defendant, and the burden of proof was upon it. Francis v. London Guarantee & Accident Co., 100 Vt. 425, 138 A. 780; Cowell v. Employers' Indemnity Corp., 326 Mo. 1103, 34 S.W.(2d) 705; Conroy v. Commercial Casualty Ins. Co., 292 Pa. 219, 140 A. 905; United States Fidelity & Guaranty Co. v. Remond, 221 Ala. 349, 129 So. 15. The insured was not required "to combine with the insurer to present a sham defense." In the words of Justice Cardozo in Coleman v. New Amsterdam Casualty Co., supra: "Co-operation does mean that there shall be a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense."

The accident happened on May 29, 1928, near Colorado Springs, Colo. On June 2, 1928, the insured went to the law office of Young & Meikle, in Colorado Springs, who had been retained by the surety company to represent him in the action brought by Kierstead. At that conference with one of the company's lawyers, he made full report as to the facts of the accident. The material parts of this signed, written statement, prepared by one of the company's lawyers, reads as follows:

"Frank Lewis Michaels, Jr., Gilder Hotel, Roswell, N. M. at present. 206 Wallace Ave., Covington, Ky.

"F. L. M. Jr., was driving at time of accident.

"F. L. M. Jr., was age 25.

"Accident happened May 29, 1928, at 2 p. m.

"Accident happened 1½ to 2 miles north of Fountain, on Pueblo Road.

"Chrysler Coupe 72—License No. Ky.—Kenton 1233—Motor No. 200921 Chassis C. H. 813P.

"Going north exceeding 50 miles per hour. Was driving in middle of road and having come over slight rise or hill saw Buick Sedan approaching on his, Buick's, right side of road, about 300 yards ahead. At this place in road there are three well defined tracks in sand about 6 and 8 inches deep—like this (here appears a rough diagram). Tried to steer car to right and could not reach right hand side of road until collision occurred. Struck Buick, cars coming together, about half of my car striking his left half front. Was out of city limits on state road. Cars stopped instantly at time of accident. Going from Roswell, N. M. to Denver, Colo. State law 35 miles per hour. * * *

"Assured went to home of G. C. Davis, 314 West Cheyenne Road, Colorado Springs. Statement made to C. G. Mims, Colorado Springs, Colo. * * *

"There was man riding with assured at time of accident—name or extent of injuries, if any, address, unknown.

"June 2, 1928.

"[Signed]    F. L. Michaels, Jr."

On November 28 following, in response to a letter from the company's attorneys, insured again called on them at Colorado Springs to inquire about his case, and no suggestion was then made that insured would be expected to furnish any additional evidence or facts. The company had, prior to that date, settled with the insured for property damage to his car, and a number of letters and telegrams had passed between him and the company regarding this settlement, and the insured had, on September 22, 1928, visited the home office of the company. On October 15, 1928, the company sent insured a letter containing a draft in settlement of his collision insurance; this being sent to Wichita, Kan., where it was received by insured. On October 17, 1928, insured telegraphed the company at its Detroit offices, and on the same date the company wrote insured a letter, addressing him at Wichita, Kan. On November 11, 1928, insured wrote his friend, Davis, at Colorado Springs, to inquire what was being done in his case, and Davis called upon the company's attorneys. Then, on November 28, as has already been noted, insured personally called at the office of the attorneys in Colorado Springs, and again related all the facts which he knew concerning the case.

The contention that the insured failed to co-operate with the company in its defense of the Kierstead action, seems to be based upon his failure to answer correspondence, or appear at the trial. Without going into details, it may be said that the only information requested in the correspondence had already been given in detail by the insured and was contained in the written statement signed by him. Of these letters, the one dated November 21, was the only one asking for specific information. A week later the insured called in person on the attorneys and gave them whatever information he was able to give them. Other letters addressed to insured at Hotel Gilder, Roswell, N. M., were not answered, and there is no evidence that they were received; but it appears that at the time they were written, the insured was not at Roswell, N. M., and it also appears that the officers of the company personally knew that he was not at Roswell, as they were at the time negotiating with him relative to settlement of his property damage. In various letters will be found a suggestion with reference to the insured attending the trial. For instance, in the letter of January 18, 1929, it is stated: "It will, of course, be necessary for you to be present at the trial, *unless you are advised in the meantime that your testimony will be taken upon deposition.*" (Italics supplied.) This could scarcely be considered as a demand that the insured personally attend the trial.

Again, by letter of February 26, 1929, from the company's attorneys to insured, it is said: "You must be present in Colorado Springs on that day to attend said trial and testify in your own behalf *unless advised by the General Casualty & Surety Company to the contrary.*" (Italics supplied.) Here, again, is a conditional suggestion as to insured attending the trial.

On March 8, 1929, telegrams were sent to Roswell, N. M., and Covington, Ky., neither of which was delivered, and on March 9, 1929, a telegram was sent to Tulsa, Okl., which was delivered. This telegram recites: "We are instructed by your surety company to withdraw from the case unless you appear to testify at the trial. Wire immediately." This, it will be observed, was not a direct request to attend the trial. It was rather a threat to withdraw from the case.

The action was not tried at that term, but continued over the term. Under date May 14, 1929, the attorneys for the company wrote the insured, advising that the case would probably come on for trial some time during the summer; that the company instructed the attorneys to continue to represent insured and give him opportunity to render such as-

sistance as he might be able to give in the defense of the cause. On June 3, 1929, the attorneys wrote insured, stating, among other things: "The Surety Company has requested us to prepare the case for trial and will defend the suit for you as provided in your policy, providing you do your part and co-operate with us in the defense of the case."

No effort was made to take insured's deposition, nor was anything ever suggested to him as to anything he might do which would be of any assistance, and it seems quite apparent that his testimony, if in accord with his written statement, would have constituted no defense. The attorneys were attempting, in form at least, to serve two masters, but they were taking directions from the insurance company, and by the contract of insurance, the insured had no control whatever over the litigation. He had been advised by the company's attorneys that further suit was threatened against him; that this suit could not be instituted, however, unless he could be served with process in Colorado, and the only purpose of this advice was that he might avoid service of process by staying out of the state of Colorado. As said by the lower court in directing a verdict: "The undisputed testimony is that the insurance company's lawyers told him in Colorado Springs that as soon as he came back to Colorado Springs, or if a certain attorney in Colorado Springs knew that he was there, they intended to sue him in another action in addition to the action already brought or about to be brought."

The co-operation provision of the policy does not specifically require that the insured attend the trial. It specifically requires that he shall not assume any liability, nor incur any expense, nor interfere with any negotiations for settlement, nor in any legal proceeding, but that whenever requested by the company, at the company's own expense, he should aid in securing information and evidence, and should co-operate with the company, "except in a pecuniary way," in the defense of the suit. Though requested to attend the trial, he was not tendered his expenses, nor assured that they would be paid. The company's attorney, called as a witness, testified: "I assumed that the Casualty Company would pay Mr. Michael's expenses if he appeared in Colorado and might prefer to take his deposition rather than go to the expense of him coming here. I was not authorized by the General Casualty & Surety Company to pay the transportation of F. L. Michaels, Jr., to Colorado Springs for the purpose of appearing at said trial. *I did not*

*at any time through any correspondence or any manner guarantee the payment of his expenses from Oklahoma or Kentucky to Colorado Springs."* (Italics supplied.)

Certainly, he was not required to assist in any sham defense, and it appears conclusively that there was no defense on the merits to the Kierstead action, except as to the amount of damages, and the entire course of maneuvering or negotiations seem to have been carried on, not with the thought of successfully defending insured against the damage action, but with a view of avoiding liability on the part of the insurance company. As early as August 22, 1928, the insurance company wrote its attorneys relative to a tentative offer of settlement. In that letter it is stated: "We will, therefore, allow Mr. Kierstead to proceed to California and return for the trial of the case. As we have previously intimated, there are angles which may work to our advantage."

Under date January 28, 1929, the company wrote its attorneys, saying, among other things:

"On account of your failure to elicit a reply from the assured, we apprehend that he is not going to pay any attention to our requests for his cooperation, and if he does this, of course, he will be violating the policy in that respect and we will be forced to disclaim any and all liability to him.

" * * * When you next see the plaintiff's attorneys you might mention to them that the assured so far has failed to reply to our request for his cooperation and very likely the company will disclaim liability and retire from the case."

As has been observed, while their attorneys were unsuccessfully attempting to communicate with the insured at various addresses, the officers of the company had no difficulty in communicating with him, and knew that he was not at Roswell, N. M., and in fact, the insured gave that address as a temporary one. We are impressed with the thought that the company at no time attempted a good faith defense in this case, but sought only to avoid liability under its policy. Had it desired to secure the attendance of the insured, his expenses should certainly have been provided for; yet the company's attorneys had no authority either to bear the expenses or guarantee their payment.

There was no evidence of a wilful failure on the part of the insured to co-operate. It cannot be said that he refused to assist in asserting a valid defense, or that he had failed

to co-operate in any material or substantial respect; in fact, his fair and frank disclosure of information enabled the company to determine that there was no genuine defense to the Kierstead action, and he was not required to assert a sham defense.

Where the evidence is such that the court, in the exercise of judicial discretion, would set aside an adverse verdict, then a verdict should be directed. Wheeler v. Fidelity & Deposit Co. (C. C. A. 8) 63 F.(2d) 562; Farmers' Natl. Bank v. Missouri Livestock Commission Co. (C. C. A. 8) 53 F.(2d) 991; St. Louis-San Francisco Ry. Co. v. Baehler (C. C. A. 8) 26 F.(2d) 26; Business Men's Assur. Co. v. Scott (C. C. A. 8) 17 F.(2d) 4; Andresen v. Kaercher (C. C. A. 8) 38 F.(2d) 462. We are clear that a verdict for the defendant must have been set aside as not sustained by substantial evidence.

We have carefully considered the other contentions of appellant and are satisfied that they present no reversible error.

The court correctly directed a verdict for the plaintiff, and the judgment appealed from is affirmed.