**PRENTISS v. MUTUAL BEN. HEALTH & ACCIDENT ASS'N.**

No. 7014.

Circuit Court of Appeals, Seventh Circuit.
Jan. 15, 1940.

Rehearing Denied Feb. 5, 1940.

2

Oscar C. Hagemier and John M. Kelley, both of Indianapolis, Ind., for appellant.

S. L. Vandeveer, Douglas H. McDonald, and T. Morton McDonald, all of Princeton, Ind., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

Plaintiff brought this action to recover on a policy of health and accident insurance issued by defendant to her husband. Plaintiff was the beneficiary. From a judgment in her favor following a general verdict, defendant appeals.

The errors assigned present a study of the instructions and the sufficiency of the evidence to support the verdict. False statements in the application constitute the basis of defendant's denial of liability.

EVANS, Circuit Judge.

On February 27, 1937, William E. Prentiss applied to the defendant for a policy of accident and sick benefit insurance. The application was approved, and, on March 5, 1937, the policy was issued. It called for the payment of $5,000 in the event of the death of the insured from accidental causes. On April 11, 1937, the insured, while driving an automobile on a highway in Indiana, was injured as the result of a collision with a truck, and two days later he died from said injuries. His wife, the plaintiff, who had accompanied him, was also seriously injured. On April 28, 1937, plaintiff sent the proofs of loss to defendant's Indianapolis office. In the "affidavit of attending physician," appeared the following paragraph styled "supplementary statement":

"Mr. Prentiss came to me last August with a rash on the foot around the base of the toes and I think a small patch of a dry rash on the tibia or lower leg. Some Doctor in the Southwest had made a tentative diagnosis of syphilis and had suggested treatment. He came to me and I have been giving him some treatment Neo Salvarsan and Bismuth. I have never made a Wassermann or other blood test but expected to take one in about one month; following his death. Mr. Prentiss had no other clinical symptoms of lues and I feel quite sure he would have shown a negative Wassermann test. This in no way contributed to his death."

At the trial it appeared that Prentiss went to Dr. Graves sometime in August, 1936, after a doctor in Oklahoma had previously looked at a rash on Prentiss' leg and had taken a blood test, as a result of which he had recommended treatment for syphilis. This information was written on a card which contained Prentiss' name, the name of the doctor who had taken the test, and, in addition, the words "4 plus Wassermann." The typewritten word "negative," also on the card, had been partially erased, but apparently was still visible.

Mrs. Prentiss testified that, in August, 1936, several months after she and Mr. Prentiss were married, she had gone back to Oklahoma for a visit. While there she took a Wassermann in connection with the renewal of her license as a beautician. The test showed "two-plus," positive, indicative of syphilis. Thereupon, her husband also had his test taken as stated above.

On the strength of this case history, Dr. Graves began, in August, 1936, to treat Prentiss. At first neosalvarsan was injected intra-venously, and later, bismuth. At this time, Dr. Graves testified that he termed Prentiss' case as syphilis in the secondary stage. The bismuth treatment, starting October 23, 1936, was continued until January 8, 1937. Then, after several weeks, another series of treatments with neosalvarsan was given. This lasted until late in February, 1937, when the bismuth treatments were again started. These treatments continued until they were terminated by Prentiss' death, in April. Dr. Graves further testified that he never gave Prentiss a Wassermann test, although he was planning to do so when the death occurred. He expressed the opinion that the test would have shown negative. When asked the significance of such a showing, he explained, "Well, it indicates, if you had a 4 plus, your treatment is doing good, but it doesn't mean you are ready to turn the case loose."

In the application for insurance which the defendant required the applicant to fill out, he was asked whether he had ever had any of certain diseases, among which syphilis was one. The applicant answered in the negative. Another question was framed thus:

"13. Have you received medical or surgical treatment or had any local or constitutional disease not mentioned above, within the last five years?"

His answer was "No." A provision of the policy read:

"This policy does not cover death, disability, or other loss sustained * * * while the Insured is suffering from syphilis or venereal disease."

Defendant's position, based on Dr. Graves' testimony, is that the insured made materially false representations concerning his medical treatment during the preceding five years, the existence of a syphilitic state, and it was therefore entitled to rescind the insurance contract and thereby avoid liability. It also contends that, upon learning of the false statements, it promptly rescinded the contract and offered to return the premium paid. Plaintiff denied this contention, and it is out of the instructions to the jury on these issues that defendant's assignments of error chiefly arise.

Defendant's first contention is that the lower court erred in submitting to the jury the materiality of the insured's false statement that he had no syphilis and had received no medical treatment in the last five years. It is urged that as a matter of law the questions and statements were material.

We look to the Indiana decisions for the applicable law and find Metropolitan Life Ins. Co. v. Becraft, 213 Ind. 378, 12 N.E.2d 952, 955, 115 A.L.R. 93, where it is said: "Where facts are misrepresented, the measure of materiality is whether knowledge of the true facts might have led the company to decline the risk, or accept it only for a higher premium. * * * But it [the question of materiality] is clearly a question of fact, and no reason is seen why it should not be determined in the same manner as other questions of fact. The jury may not arbitrarily decide the question contrary to the preponderance of

the evidence. Where the evidence is such that there can be no reasonable difference of opinion, the court will control the determination of the jury, but where the evidence is such that reasonable men might differ in their conclusions, the matter will be left to the jury."

The instruction was limited to the materiality of the representation concerning medical attendance. No mention is made of the statement that insured had not suffered from syphilis.

■ Defendant also complains because the court failed to instruct the jury that the fact that the insured died from a cause other than the concealed facts in his application was not material on this question. The law of Indiana is settled by the decision of the court in this same case of Metropolitan Life Ins. Co. v. Becraft, supra. There it was said: "But the court refused to instruct 'that the fact that the deceased may have died from a disease or cause other than from the disease which may have been concealed is immaterial and if you find that the concealed facts were material and relied upon by the insurance company at the time of the issuance of the policy, this would void the policy even though the insured may have died from causes other than the concealed facts.' "

To the same effect, see Couch, Cyclopedia of Insurance Law, Vol. 4, p. 2694.

The materiality of the interrogatories, as well as the answers given by the insured, is asserted and disputed by opposing counsel. They raise a question not entirely free from doubt. It is, we think, quite obvious that questions and answers which would be material in an ordinary life insurance policy may nevertheless be viewed as immaterial in an accident insurance policy. Business Men's Assur. Co. v. Campbell, 8 Cir., 32 F.2d 995; Standard Life and Acc. Ins. Co. v. Martin, 133 Ind. 376, 33 N.E. 105. Moreover, the debatability of the existence of the syphilitic condition adds to the doubt.

While there is a dearth of authority upon the materiality of questions submitted in view of the fact that the insured was seeking accident insurance, we nevertheless reach the conclusion that the materiality of this question was not a factual issue for the jury. Such cases as we have found lend support to this view. [1]

■ We must hold as a matter of law that the questions and answers were material. The fact that health as well as accident was covered by this policy is somewhat significant. Equally worthy of note is the provision above quoted, to the effect that the policy does not cover death or disabilities while the insured is suffering from syphilis.

■ Another assignment of error arises out of an instruction as to the necessity of defendant's promptly rescinding the contract after discovery of the falsity of the statements made by the insured. The law of Indiana has been stated in several decisions. See Commercial Life Insurance Company v. Schroyer, 176 Ind. 654, 95 N.E. 1004, Ann.Cas.1914A, 968; Metropolitan Life Ins. Co. v. Solomito, 184 Ind. 722, 112 N.E. 521; Grand Lodge of Brotherhood of Railroad Trainmen v. Clark, 189 Ind. 373, 127 N.E. 280, 18 A.L.R. 1190.

In the Schroyer case the court said [176 Ind. 654, 95 N.E. 1005, Ann.Cas.1914A, 968]: "The rule as settled by decisions of the courts of this state is that contracts of insurance with such provisions are not rendered absolutely void by a breach of warranty or by reason of false answers to questions affecting the risk contained in the application as a part of the contract of insurance, such as are involved in this case, but that they are voidable at the election of the insurer; that, before a defense on such ground can defeat a recovery by the beneficiary in a suit on the policy, the insurer must take proper steps to exercise its election to avoid and rescind the contract; and that tendering back the premiums received is one of the necessary steps in making the election to rescind."

The court instructed the jury in this case that if it found the insured did in fact make false representations and these representations were material, defendant was, nevertheless, under the obligation, if it wished to rescind the contract, to inform plaintiff of its election to rescind, and to return the premium "within a reasonable time."

Following this was the further instruction to the effect that the premium must have been returned before the action was begun, to be within "a reasonable time." As a matter of fact, no return of the pre-

---

[1] Dudgeon v. Mutual Benefit Health & Accident Ass'n, 4 Cir., 70 F.2d 49; Koppleman v. Commercial Casualty Co., 302 Pa. 106, 153 A. 121; Rust v. Metropolitan Life Ins. Co., 36 Del. 294, 175 A. 198.

mium was ever made until this action was begun when the amount was deposited with the Clerk of the court.

■ Defendant contends, and we think correctly, that if it truly endeavored to make a return of the premium, but was unable to find the beneficiary, or was prevented from seeing her, the actual return of the premium to her would be excused.

As to defendant's efforts to return the premium, the evidence showed that the beneficiary was seriously injured in the accident which caused the death of her husband. She was in the hospital for some months. She could not look after her affairs and asked a friend of the family, an attorney, S. L. Vandeveer, to help her.

She turned the insurance policy over to him, and asked him to represent her. She maintained, however, that she did not formally retain him as her attorney until immediately before this action was begun.

On June 8, 1937, Vandeveer wrote the Company, at Omaha, Nebraska, requesting early payment. He stated that he had been "attending to the business affairs of Mrs. Prentiss." In response to this letter, Mr. Thomas, a Junior Executive of the defendant, called on Vandeveer and explained to him that the company was rescinding the contract and would repay the $19 premium. Vandeveer refused, Thomas testified, but said that he would refer the matter to Mrs. Prentiss. Vandeveer denied that he was ever offered $19, but he admitted other offers.

On June 29, 1937, Vandeveer wrote to the Company as follows: "If the loss under this policy is not paid in due course, Mrs. Erma Prentiss, widow and beneficiary, and I, her attorney, will consider ourselves justified in taking such steps in furtherance of the collection thereof as we deem proper."

Mr. Thomas further testified that he made numerous trips to see Vandeveer during the summer and fall of 1937. On several occasions he offered to settle Mrs. Prentiss' claim for larger sums. First $500 was offered, and then, about May 5, or 6, 1937, he offered $1000.

About the end of June, 1937, Thomas accompanied Vandeveer to the hospital at Princeton to see Mrs. Prentiss to explain why the company refused to pay her claim. However, Mrs. Prentiss was unable to see him.

Vandeveer at all times denied that he was acting as attorney for Mrs. Prentiss, or that he was acting in any other capacity than as a friend trying to help out in time of trouble. However, in a letter dated May 19, 1938, he wrote to the Insurance Company as follows: "Inasmuch as you have more than once frankly told me you wish to see my client, Mrs. Prentiss, and explain to her from your standpoint that she has no claim against your company, I will be equally frank. When she was here at Princeton I knew from your first letter that you wished to see her and she and I talked the whole situation over and she and I were of the same opinion that it was not to her interest to have any interview with any of your representatives; that I am her attorney and any communication can very properly be made to me and I will in the future as I have in the past faithfully inform her of what you have to say."

In another letter, dated September 2, 1938, Vandeveer states: "Feeling that there should be no further delay in this matter I have commenced an action on the policy for $5,000.00 and interest. However, I am open to negotiations for a compromise settlement of the policy if you are interested in such a settlement."

Mrs. Prentiss admitted that she herself never made any attempt to get in touch with defendant. Upon her release from the hospital, she took an apartment in Princeton for a short time and then went back to her home in O'Keene, Oklahoma. While there, she visited friends, seldom staying long in one place. However, she denied that she tried to hide herself from defendant's agents.

From this state of the evidence, it seems fairly clear that the defendant was unable to see Mrs. Prentiss after having made reasonable efforts to do so, and communicated with Vandeveer concerning the claims. To him it made more than a tender of the premiums paid. By his own testimony, it offered at least $1000, and possibly as much as $1750, at one time.

The question before us may be stated thus:

Did defendant's offer to pay $500 or $1000 (and possibly $1750) constitute a tender of or an offer to return the $19 premium paid by the insured? Or did such action by defendant negative any intent to cancel the contract?

 We agree with the District Court that this issue was one for the jury under proper instructions. Either defendant must return the premium within a reasonable time or it must use all reasonable efforts to make such return. Its action must be unequivocal. An offer to settle the case is not its equivalent. While an offer to settle any case may be made without compromising the position of the offerer, it can not be used to establish an offer to return premiums paid. In fact, the jury might well recognize in an offer of $1000 (if such evidence were received without objection to show an offer to return the $19 premium) that such a proposal was a ratification rather than a repudiation of the policy. It is more consistent with recognition than repudiation of liability. It should be added that the evidence of these offers was not all the testimony bearing on this issue of tender of premium and rescision of the contract, but on all the evidence it is still a jury question.

On this phase of the case, there is another fact controversy. It arises over the extent of the authority of Vandeveer to bind Mrs. Prentiss.

 There is also here presented the question of the timeliness of defendant's action. It seems to us, however, that no jury question is involved as to the timeliness of defendant's action. It acted promptly. Grand Lodge v. Clark, 189 Ind. 373, 380, 127 N.E. 280, 18 A.L.R. 1190.

From the foregoing it must appear that on a new trial, if the evidence be the same, the court should hold the false representations respecting syphilis were material. Upon the defendant's discovery of their falsity, it had the right to rescind the contract. Upon such discovery, however, the contract was not void but voidable. Only by defendant's action, taken timely, to rescind the contract would it be rescinded. The necessary action on defendant's part included the return, or a bona fide effort to return, the premium. This return had to be promptly made after discovery of the false statements. Defendant could pursue one of two courses. It could, for the sake of policy or otherwise, decline to cancel the contract and settle its liability by payment. It likewise had the option to rescind the contract. It was required to make an election. If rescission was its election, it was required to act with reasonable promptness. In addition it was required to either return the premium or endeavor to do so. As the evidence stands, a jury question was presented over defendant's action in rescinding and offering to return the premium. As to the materiality of the questions submitted to insured and the answers which he falsely made, no jury question is involved.

The judgment of the District Court is reversed, with costs, with directions to grant a new trial.

