## DE HART v. ILLINOIS CASUALTY CO.
### No. 7399.

Circuit Court of Appeals, Seventh Circuit.
Dec. 10, 1940.

Rehearing Denied Jan. 16, 1941.

Geo. B. Gillespie, Edmund Burke, and Louis F. Gillespie, all of Springfield, Ill., for appellant.

Walter C. Williams, of Michigan City, Ind., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Defendant disputes liability solely on the ground that the assured, Roin, failed to cooperate with it in "securing information, furnishing evidence and attendance of witnesses" in the trial of the original action.

Among other clauses, the insurance policy provided:

"No action shall lie against the Company unless, as a condition precedent thereto, the assured shall have fully complied with all the conditions hereof. * * *."

"Assured shall render to the Company full cooperation and assistance in securing information, furnishing evidence and the attendance of witnesses."

"The neglect or failure of assured to comply with the foregoing requirements or the refusal to comply with a request of the Company or its attorney or representative for the cooperation and assistance stated above, shall relieve the Company of all liability under this policy."

The Facts. Ben Roin, with the consent of Ben Reuben, upon whose car the automobile insurance was written, drove the automobile into the State of Indiana, where a collision occurred in which plaintiff was injured and his car damaged. Roin also claimed damages to himself and the car he was driving. Plaintiff sued for damages, and the defendant Roin counterclaimed.

In the course of the trial one Henry Jacobsen testified for the defendant Roin, and falsely stated that he was present at the accident. His story revealed negligent driving by plaintiff and careful action on the part of Roin. Before the trial was completed, however, plaintiff recalled Jacobsen for further cross-examination and caused him to take the witness stand, where he stated that his previous testimony was false; that he was not present at the time of the accident and knew nothing about it; that one David H. Greenberg, attorney for Roin had persuaded him to take the witness stand for the defendant and to testify falsely to facts related to him by Greenberg. He said his previous testimony was false and fictitious.

Thereupon the court excused the jury and conducted an investigation into the

686

facts and circumstances surrounding the perjury and subornation of perjury. It appeared on this investigation that counsel for defendant herein were not involved in the subornation of perjury, and were ignorant of the falsity of Jacobsen's testimony when it was first given. Defendant herein, then moved to withdraw a juror and declare a mistrial, which was denied.

After the verdict, defendant Roin, who denied knowledge of the falsity of Jacobsen's story (although court and jury found otherwise) moved for a new trial which was denied. Roin took no appeal from the judgment against him, and it remains unsatisfied.

Defendant herein, after the disclosure of the perjury, participated in the trial, presented other witnesses, argued the case to the jury, submitted proposed instructions, asked for stay of entry of judgment, and not until the judgment was about to be entered did it withdraw from further participation in the case, asserting for the first time, lack of cooperation and assistance on the part of Roin.

Rejection of defendant's attack on the judgment is urged because of,

(1) The action of the defendant in electing to proceed with the trial and take a chance on the verdict.

(2) The failure of the evidence to show a breach of the contract. Appellant unduly stretches the provision of its contract which required assured's cooperation.

(3) The fact that the court found that cooperation and assistance were given. We quote from one of its special findings:

"* * * that, pursuant to the provisions of such policy, * * * Ben Roin * * * cooperated at all times with the defendant in this action in the preparation of said cause for trial, and in the presentation of the evidence to the jury; that this defendant did not know that the witness Jacobsen would commit, or had committed, perjury, prior to his admission thereto upon the witness stand, but, after he had admitted in open court that he had committed perjury in his former testimony, and after the examination of said witness and his attorney, Greenberg, in the absence of the jury, the attorneys for the defendant in this action who were representing the said Ben Roin in cause No. 601, did not withdraw from that case and refuse to participate further in the trial of the same, but continued to conduct the defense; that the defendant Roin thereafter took the witness stand in that case, was examined by attorneys for the defendant in this case and testified in his own behalf; that attorney Greenberg was also called to the witness stand by the attorneys conducting the defense and testified as a witness for the defendant."

While the court found that Roin cooperated at all times with the defendant in the preparation of said cause for trial and in the presentation of the evidence to the jury, it also found that the defendant herein did not know that the witness Jacobsen would commit or had committed perjury prior to his admission on the witness stand.

Defendant argues that this last stated fact impeaches and negatives the finding of cooperation.

In considering the effect of this asserted lack of knowledge by defendant, we can not ignore another special finding that said witness Jacobsen also testified that he had not been employed for a period of months prior to the trial and was not employed at the time of trial, when it was known to the defendant herein, the insurance company, that he was at the time of the trial and prior thereto, employed by a taxicab company in the City of Chicago as an investigator.

In other words, it is not a complete or correct statement to say that defendant was unaware of the falsity of Jacobsen's testimony. Its representative examined Jacobsen before trial, and it knew the moment Jacobsen testified that his testimony was false so far as occupation and employment were concerned.

Whether the finding that there was, excluding this knowledge of falsity of part of this witness' testimony, cooperation depends, in part, upon the terms of the insurance contract and particularly the terms of the provision which called for "full cooperation and assistance."

The query naturally arises—In what subjects was there to be cooperation? It was to be in three matters. The provision above-quoted is clear.

(a) First, in the attendance of witnesses. Obviously there was no default here.

(b) Second, assistance in securing information. Again, there was no breach. Roin gave to the defendant the names of possible witnesses who were examined by

the defendant. The defendant was free to examine them and did examine them before trial.

(c) The third activity in which the assured was to give full cooperation was in the matter of "furnishing evidence." What constitutes "furnishing evidence?"

■ This language was chosen by defendant, who wrote the policy. In case of doubt all uncertainty should be construed against, rather than in favor of, the insurance company.

Notwithstanding the inclusive implications of the word "furnish" we hardly feel justified in construing it to include perjured testimony. This view, however, does not dispose of the question, for the assured's obligation was to render "full cooperation" in "furnishing testimony."

Specifically, the query is—Does one who in a personal injury case produces a witness who testifies falsely but favorably to the non-liability contention of the insurance company, fail to cooperate? In a broad sense, it may be truly said the assured *over-cooperated.* 'May such over-cooperation constitute failure to cooperate? A too-willing witness can hardly be charged with a lack of cooperative effort because of his too-willingness. So it may be said of the witness whose overstatement extends to deliberate falsehoods. Notwithstanding the rather persuasive argument that there was no lack of willing or full cooperation on the part of Roin, we accept the insurance company's more ethical position that over-cooperation which consists of the giving of perjured testimony, is lack of cooperation, provided the insurance company is unaware of the extent (to-wit, perjury and subornation of perjury) of said over-cooperation.

This brings us to the effect of defendant's course when the falsity of Jacobsen's testimony was by it discovered.

■ The discovery of perjury and assured's part therein gave to the insurance company an election of courses which it could pursue. It had, or at least it could assert it had, the option to withdraw then and there and deny liability because of lack of cooperation. On the other hand, it could waive its right and proceed with the trial and possibly win the case then about to be submitted to the jury.

Its situation was not unlike that of an insurance company, which upon the discovery of false and fraudulent statements made in an application for insurance, has the option of rescinding the contract or waiving the fraud and continuing to collect premiums. In other words, it may rescind or ratify. Prentiss v. Mutual Ben. Health & Acc. Co., 7 Cir., 109 F.2d 1. It can not do both. Also quite similar is the situation of one who hears counsel make improper and inflammatory statements to a jury, yet who sits by and complains not until after the verdict is rendered. Paschen v. United States, 7 Cir., 70 F.2d 491.

An unusual situation confronted the parties in the instant case. Plaintiff was free from fault. He participated in neither the perjury nor in the subornation of perjury. The insurance company may likewise be acquitted of any participation in the subornation of perjury. Nevertheless it was subject to a possible charge of participation therein, because of the fact that it knew when the testimony was given that Jacobsen was testifying falsely as to a material fact.

The insurance company's counsel were charged with a duty of election of courses to be pursued. This duty was met by its counsel's weighing the possibilities of victory or of small recovery against the possibility of a complete denial of liability because of Roin's failure to give full cooperation, which issue might well become one of fact, in view of its knowledge that Jacobsen had testified falsely in reference to a material fact. Then too, there may well have been a question of business policy involved.

In other words, it was defendant's clear duty to act. It did so. It took the chance of winning the case before the jury. Thereby it lost its right to assert its defense under the full cooperation clause of the contract.

Moreover, it is worthy of note that the defendant never gave an unqualified notice of its intention to rely upon the assured's failure to fully cooperate with it. On this issue the court made the following finding:

" * * when said motion (for mistrial) was by the court overruled, the defendant in this action, through its attorney, before the resumption of said trial, prepared and presented to said Ben Roin an agreement in writing wherein it was provided that they could continue the defense of said action without waiving the violation of any of the provisions of their contract of insurance, and they represented to said Roin at such time that they would

withdraw from the defense of said action unless he, the said Roin, would execute such agreement; that the said Roin refused to execute said agreement, but, nevertheless, such attorneys continued in said trial, * *."

Defendant's statement that unless the agreement was signed it would withdraw, was inconsistent with its contention that it notified assured of its reliance upon the non-cooperation as the basis for its asserted non-liability.

We need not consider the effect of defendant's failure to repudiate that part of the witness' false testimony which was to it known to be false or the further question of the right of defendant to assert against *plaintiff*, the defense here raised which may have existed against the insured.

The judgment is affirmed.

## SPARKS, Circuit Judge (concurring).

I concur in the result of the main opinion, but I cannot concur in its statement that "we accept the insurance company's contention that the over-cooperation which consists of the giving of perjured testimony was lack of cooperation." I vote for affirmance because the evidence fails to show a breach of the contract.

Condition 10 of the policy provides " * * * no action shall lie against the company unless, as a condition precedent thereto, the assured shall have fully complied with all the conditions hereof, nor until the amount of the assured's obligation to pay shall have been determined either by final judgment against the assured after actual trial or by written agreement of assured, the claimant, and the company * * *. Any person or his legal representative who has secured such judgment * * shall thereafter be entitled to recover under the terms of this policy in the same manner and to the same extent as the assured."

Giving effect to each clause of these provisions would seem to indicate that it was the intention of the parties that any lack of cooperation, if any, on the part of the insured, or his agent, should be disclosed before final judgment, providing the judgment creditor had not been guilty of fraud in its procurement. No one claims that the plaintiff in this case was guilty of any fraud. The policy, in effect, provided that the company might appeal the case in the name of the assured, or his

agent, and there is no evidence that Roin failed to do anything in the way of co-operation that the company asked of him. There was no appeal from the judgment against Roin. After the expiration of the time for appeal, the judgment became final and comes to us in this case with the presumption that there was no error in rendering it. The company participated in the defense of the first case, and I think it is too late now to defeat a recovery in the case for the lack of cooperation of Roin, if any, in the first case.

Furthermore, I think there was no lack of cooperation on the part of Roin or the insured.

## LINDLEY, District Judge (dissenting in part).

I regret that I am unable to assent to the conclusion that the proof established a waiver of the right of forfeiture by the insurer. Waivers are either express,—intentional,—or constructive,—implied. If of the latter class, they are a branch of estoppel. Thus, in Globe Mutual Life Ins. Co. v. Wolff, 95 U.S. 326, at page 333, 24 L.Ed. 387, Mr. Justice Field said: "The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions."

The Supreme Court of Illinois has twice said that "The doctrine of waiver, as applied to such a case as this, is that of estoppel in pais. There is no substantial distinction between the two, and the terms are used interchangeably, a waiver being only another name for an estoppel." Phenix Insurance Company v. Grove, 215 Ill. 299, 74 N.E. 141, 142, 25 L.R.A.,N.S., 1; Dwelling House Ins. Co. v. Dowdall, 159 Ill. 179, 42 N.E. 606. The same court has held that if the act of the insurer has not in any way affected the actions of the insured, that if he has not been led to do or omit to do that which he would otherwise have omitted or done, there is no waiver. Obviously this is because there is no estoppel. Weston v. State Mut. Life Assur. Co., 234 Ill. 492, 84 N.E. 1073. Other insurance cases illustrating the tenet that

an implied waiver of an insurance policy is essentially a branch of estoppel and that before it is effective, there must be a misleading of the insured with consequent action upon his part in reliance upon that which misled him resulting in disadvantage or injury to him, are Traders' Mut. Life Ins. Co. v. Johnson, 200 Ill. 359, 65 N.E. 634; Bennett v. Union Central Life Co., 203 Ill. 439, 67 N.E. 971; Lunt v. Ætna Life Ins. Co., 261 Mass. 469, 159 N.E. 461; Morrison v. Royal Ind. Co., 180 App. Div. 709, 167 N.Y.S. 732; Weidert v. State Ins. Co., 19 Or. 261, 24 P. 242, 20 Am.St.Rep. 809.

Furthermore many courts have held that if the waiver is not in the nature of an estoppel, to be effective, it must be based upon the law of contracts and include consideration. Smith v. Minneapolis Threshing Machine Co., 89 Okl. 156, 214 P. 178; Newman v. Roach, 111 Okl. 269, 239 P. 640, 642; Schwab Safe & Lock Co. v. Snow, 47 Utah 199, 152 P. 171, 176; 67 C.J. 296.

In the present case, at the time of the alleged waiver, the insured was denying and thereafter denied emphatically from the witness stand that he had knowledge of or participated in securing the admittedly perjured testimony. Not until the jury found affirmatively on a special interrogatory to the contrary was this question settled. Not until that time was defendant authoritatively charged with notice of the insured's breach of contract. When defendant first learned of the perjury, it promptly moved for a mistrial; that being denied, it proceeded to make the best defense possible in the face of circumstances sadly prejudicial, for Roin's participation in the fraud could act upon the jury's judgment only unfavorably to his cause. Defendant did not abandon the trial then approaching conclusion; it did not desert the insured, then caught in a precarious dilemma of his own making; rather, it presented full defense, and withdrew only after completing that defense and after the jury had found that the insured had participated in the fraud. This situation, it seems to me, created no implied waiver—no estoppel. Defendant did nothing upon which its insured relied to his injury or disadvantage. On the contrary, it protected him when it was not bound to do so. Had it withdrawn from the trial when the motion for a mistrial was denied, the insured would have been marooned in the uncharted sea of a jury trial and thereby subjected to probable irreparable injury. He was not misled; he was gratuitously defended. There was clearly no intentional waiver, no express waiver, and, in my opinion, the facts are not sufficient to create a waiver implied from the acts of the insurer. As Judge Baker said in American Cereal Co. v. London Guarantee & A. Co., 7 Cir., 211 F. 96, at page 99, "there is no estoppel unless plaintiff has been misled and injured." And "if defendant's interposition in the Overhouser case prevented plaintiff from presenting fully its defense, or in any way prejudiced plaintiff in the final results of that case, a different question from the one before us would be presented."

I am fully conscious of the rule that an insurance contract should be construed strictly against the company, in view of the fact that the latter drafts it; but it is also true that such a policy is a contract binding each of the parties and that waivers and estoppels relating to the same are governed by the same rules as those abiding in contracts in general. Courts may not make new contracts for parties; their functions consist of enforcing and carrying out those actually made. Imperial Fire Insurance Co. of London v. Coos, 151 U.S. 452, 14 S.Ct. 379, 38 L.Ed. 231.

The insured having been guilty of a breach of his contract and plaintiff having only such rights as the insured, General Cas. & Surety Co. v. Kierstead, 8 Cir., 67 F.2d 523, in the absence of any waiver or estoppel, the suit should have failed. I think the judgment should be reversed.